THE PEOPLE *ex rel.* John R. Adams

*v.*

THE GOSS & PHILLIPS MANUFACTURING COMPANY *et al.*

*Filed at Ottawa June 20, 1881.*

1. STOCKHOLDER'S SHARES—*sale on execution.* The secretary of a private corporation is a proper officer of the company with whom to leave a copy of an execution by a sheriff, in order to effect a levy upon the shares of a stockholder in the company. The word "clerk," in the statute, means the officer having the custody of the books and records of the company, and the word "secretary" is but another name for the same officer.

2. SAME—*who to certify to copy of execution, in order to make levy on shares of stock.* The statute requiring an attested copy of an execution to be delivered to the clerk, etc., of a corporation, as a prerequisite to a levy upon the shares of stock held by the defendant in execution in the corporation, does not require the clerk of the court to verify such copy, and attest it by the seal of the court. The sheriff holding the execution may properly certify to the correctness of the copy.

3. SAME—*verification of copy of execution.* A copy of an execution directed to the sheriff of a certain county, delivered by him to the clerk of a corporation, having indorsed upon it the words: "the within is a true copy of the execution and fee bill in *my* hands, under which $I$ have seized the shares of stock of the within named defendant," etc., but not signed by the sheriff, is officially verified or attested, within the requirement of the statute relating to levy on shares of stock in corporations. The language identifies the maker of the indorsement.

4. SAME—*duty to transfer stock sold on execution to purchaser.* The purchaser of stock in a corporation, at sheriff's sale, has a right, under the statute, on leaving with the officer of the corporation whose duty it is to record transfers of shares, within fifteen days after the sale, an attested copy of the execution and of the return thereon, to have the corporation consent to hold possession of the stock for him, and to have his title made manifest by the necessary transfer upon the books, and by the issue of new stock certificates directly to him, for the shares sold to him.

5. SAME—*levy on shares of stock—when actual.* An actual levy upon shares of stock held by a debtor in a corporation is accomplished by the sheriff, where he has exhibited to the keeper of the stock books of the corporation his execution, and on demand, for the purpose of levy, has procured and received from the corporation "a certificate of the number of shares or amount of interest held by the judgment debtor," and has indorsed upon his execution

a statement that the shares named in the certificate are taken in execution, or levied upon. When the sheriff delivers to the proper officer of the corporation an attested copy of the execution, the stock of the debtor shall be considered as seized on execution. This is only a constructive levy.

6. The officer of a corporation may have the right, before giving to the sheriff a certificate of the shares held by the judgment debtor, to require not only an exhibition of the execution, but also an attested copy of the execution, as a voucher for his act in surrendering to the sheriff the shares of stock to be levied upon. But the right to such voucher may be waived by the corporation, and this is done by giving the certificate of the debtor's shares to the sheriff. The giving such certificate is a waiver of any defect in the attestation of the copy of the execution delivered.

APPEAL from the Appellate Court for the First District; —heard in that court on appeal from the Superior Court of Cook county; the Hon. JOSEPH E. GARY, Judge, presiding.

Mr. W. T. BURGESS, for the appellant:

The word "clerk," as an officer, and not as an employee, is synonymous with "secretary." Bouv. Law Dic. "Clerk."

Various names are applied to offices and officers in different corporations which are synonymous. Thus, to manage the affairs of a corporation, we have "trustees," "managers," "directors," "wardens," "vestrymen." To keep records, "clerk," "secretary." To keep money, "cashier," "treasurer." To preside at meetings, "president," "chairman," "moderator."

*Ex vi termini,* when a statute uses any one of those terms, a corporation that uses any other synonymous term is within the statute. To give it any other construction is sticking in the bark.

What is meant by "leave with," as used in section 53 of the act relating to corporations, in force July 1, 1872? In *Whitman* v. *Fisher,* 74 Ill. 147, this court held, that "leaving a copy with" is equivalent to "delivering a copy," and of course the "delivering of a copy," used in the officer's return, must be equivalent to "leaving a copy with," used in the statute.

The "attested" copy of the execution required to be left with the clerk of the corporation, does not mean a certified copy made by the clerk of the court, attested by the seal of the court. Such copy may be made and attested by the sheriff having the writ in his hands. The writ is not a record until it is returned and filed. 1 Starkie's Ev. *330; Buller's Nisi Prius, 234.

Mr. S. M. MILLARD, for the appellees:

A levy upon shares of stock in a corporation can only be made by following the statute. *Titcomb* v. *Union Marine and Life Ins. Co.* 8 Mass. 334; *Howe* v. *Starkweather,* 17 id. 240.

At common law, stock in a corporation is not subject to seizure and sale on execution, and the statute which gives the right must be strictly pursued. *Benson* v. *Smith,* 42 Me. 415; *James* v. *Pontiac and Groveland P. R. R. Co.* 8 Mich. 91.

It is like the service of a summons,—the statutory requirements must be followed. *Mack* v. *Brown,* 73 Ill. 295; *Cairo and Vincennes Railroad Co.* v. *Joiner,* 72 id. 520.

And the return must show how the service was made. It must be certain to every intent. *Ball* v. *Shattuck,* 16 Ill. 299; Herman on Execution, 373.

The statute requires an attested copy of the execution to be left with the clerk, treasurer or cashier of the company, if there be any, otherwise with any officer or person having the custody of the books and papers of the corporation, and the property (stock) shall be considered as seized on execution when the copy is so left. In this return it is not shown that there was no clerk, treasurer or cashier. The officer does not return that fact, nor does he return the fact that he left an attested copy of the execution with any such officer, or with any person having the custody of the books and papers of the corporation, as the law requires. *Cairo and Vincennes Railway Co.* v. *Joiner,* 72 Ill. 520; *Mack* v. *Brown,* 73 id. 295.

That the word "attested," in the act, means authenticated, counsel cited *Vance* v. *Reardon*, 2 Nott & McCord, 299; *Ladd* v. *Blunt*, 4 Mass. 402; *Jenkins* v. *Kinsley*, Coleman & Caine's Cases, 136; *Pipoon* v. *Jenkins*, 2 Johns. Cas. 119; *Princeton Bank* v. *Crozer*, 2 Zabr. 383.

Mr. JUSTICE DICKEY delivered the opinion of the Court:

This is an appeal by Adams from the judgment of the Appellate Court for the First District, whereby a judgment of the Superior Court of Cook county was affirmed, denying a petition of Adams for a writ of *mandamus*, to compel the corporation to transfer to him upon its books certain shares of stock standing in the name of Church, and to issue new certificates for the same to Adams.

Upon the facts disclosed in the record, we think Adams is entitled to have the new certificates issued to him, and to have the shares transferred to him on the books of the corporation.

Our statute declares: "The share or interest of a stockholder in any corporation may be taken on execution, and sold as hereinafter provided." (Sec. 52, chap. 77, Rev. Stat. 1874, p. 628.) By section 53 it is said: "The officer shall leave an attested copy of the execution with the clerk, treasurer or cashier of the company, or where there is no such officer, with any officer having the custody of the books and papers of the corporation, and the property shall be *considered as* seized on execution *when* the copy is *so* left, and shall be sold in like manner as goods and chattels."

It is provided by section 55, that "the officer of the company who keeps a record or account of the shares" of the stockholders therein, upon the exhibiting to him of "*the execution*," shall be bound to give a certificate of the number of shares held by the judgment debtor.

By section 56 it is provided, that "within fifteen days after the sale, an attested copy of the execution and of the return thereon shall be left with the officer of the company whose

duty it is to record transfers of shares, and the purchaser shall thereupon be entitled to a certificate or certificates of the shares bought by him, upon paying the fees therefor, and for recording the transfer."

In this case, Adams recovered a judgment against Church in the Superior Court of Cook county, on the 15th of January, 1877, for $494.02, and sued out an execution, which was delivered to the sheriff of Cook county on the 16th day of that month, and the sheriff, upon the 17th day of the same month, exhibited to Charles L. Jenks, the secretary of the Goss & Phillips Manufacturing Company, (a corporation under the laws of Illinois, whose principal office was in the county of Cook,) this execution against Church. Church had become a stockholder in that corporation in 1871, and received five stock certificates of that date, each for ten shares, and these shares were still standing on the books of the corporation in the name of Church, the judgment debtor named in the execution.

At the same time when the sheriff exhibited this execution to the secretary of the corporation, he also delivered to him a copy of the execution, with a written indorsement thereon, as follows:

" *To the Goss & Phillips Manufacturing Company:*

"The within is a true copy of the execution and fee bill in my hands, under which I have seized the shares of stock of the within named defendant, George E. Church, in said company, and his interest therein."

This indorsement was not signed. Thereupon the secretary of the company, on the demand of the sheriff, gave to him a certificate, signed by him as secretary of the company, stating, " there are on the books of our company fifty shares of stock standing in the name of George E. Church, as follows," etc., giving the number of each of five stock certificates, being numbers 50, 54, 55, 56 and 57, respectively, each for ten shares of stock, and each dated May 8, 1871. The sheriff

having received from the secretary this certificate representing fifty shares of stock standing on the books of the company in the name of Church, indorsed upon his execution that he had levied upon the same, and proceeded to advertise and sell the same as goods and chattels, and at the sale, Adams, the creditor, became the purchaser. The sale was on February 3, 1877. Within fifteen days after this sale, Adams, the purchaser, (on Feb. 5, 1877), delivered to the secretary of the corporation, whose duty it was to record transfers of shares on the books of the company, a duly attested copy of the execution and of the return of the sheriff indorsed thereon, showing the facts as here stated, and demanded that these shares of stock should be transferred on the books of the company to him, and that a certificate or certificates be issued to him for the stock so bought by him. This was refused, and Adams thereupon brought his petition for a *mandamus.*

In the progress of the cause it was made to appear, that of the certificates issued to Church in 1871, four had been assigned by Church to the Union National Bank, and one had been so assigned to Alfred Ray; that each of these assignments was made before the date of Adams' judgment, and as collateral security for debts due from Church, and that neither of the debts was ever paid, and that the certificates were in the hands of the assignees before the judgment, and still so continued to be held; but no transfers of the stock had ever been made on the books of the company, nor does it appear that the corporation, or the judgment creditor, or the sheriff, had any notice of such assignments until after Adams had demanded the transfer to him, and the issue of new certificates therefor.

It is objected to the validity of the sale by the sheriff, that (as is insisted) no valid levy was made by the sheriff. It is contended that the only valid levy provided for by this statute consists in a strict compliance with the provisions of section 53, and that there is a failure to show such compliance, in two respects.

It is claimed that the *secretary* of the company was not the proper officer with whom to leave a copy of the execution. The statute names as such officer the "clerk, treasurer or cashier" of the corporation. Where a clerk is mentioned as an officer of such a corporation, and not as a mere employee, we understand that term to mean that officer who usually has the custody of the books and records of the company. The secretary of such a corporation is but another name for the same officer. There is no substance in this objection.

Again, it is said that the copy of the execution left with the secretary was not "an *attested* copy." It is even claimed, that to be an attested copy it was essential that the copy should have been verified by a certificate by the clerk of the court from whose office it was issued, attested by the seal of the court. The statute surely does not expressly require this, and we find no good reason for so holding. We can not doubt that a sheriff or other officer having in his hands legal process from a court, may properly certify to the correctness of a copy thereof. Had the sheriff signed his name officially to the indorsement found on the back of the copy left, we can not doubt that this would have been just such an attestation as is provided for in section 53. As it is, it seems a substantial compliance with the statute. What is "an attested copy?" To attest means to verify. The word attest is derived from the latin words, *testis*, a witness, and *ad*, to, and strictly means to bear witness to. In the connection used in this statute, an attested copy is a copy officially verified to be such. The execution was addressed to the sheriff of Cook county. He alone was authorized by law to make a levy by that process. When, therefore, that sheriff delivered a copy of that process, having indorsed upon it the words, "the within is a true copy of the execution and fee bill in *my hands*, under which *I* have seized the shares of stock of the within named defendant," etc., did he not officially verify the correctness of the copy as fully as if he had signed his

name thereto?   The very language of the indorsement iden-
tifies the maker thereof as certainly as if his name had been
signed thereto.   It says, the process is "in my hands," and
it is that "under which *I* have seized," etc.   Now, none other
than the sheriff of Cook county could lawfully seize under
that process in his hands.   Be this as it may, all this seems
of no moment, since the corporation has surrendered its custody
of the stock which it held for Church, and consented to hold
the same for the sheriff.   Thus the possession of the interest
of Church in the property of the corporation, which the cor-
poration held for Church, was changed by the act of the
corporation, and became a possession in the corporation for
the sheriff as the instrument of the law, having power to sell
the same..

An actual levy of a *fi. fa.* by a sheriff upon goods, consists
in the taking such possession thereof as is practicable, in
view of the nature and character of the property.   When
this is done, the officer, in contemplation of law, is in the
actual possession.   This statute seems to contemplate an
actual levy or seizing of the interest of the debtor before
sale, by the surrender to the sheriff by the corporation of
a certificate representing that interest, and stating what that
interest is.   And the statute also provides for a constructive
levy, which may precede such actual levy.

The actual levy is accomplished by the officer when he has
exhibited to the keeper of the stock books of the corporation
his execution, and on demand, for the purpose of levy, has
procured and received from the corporation " a certificate of
the number of shares or amount of interest held by the judg-
ment debtor," and has indorsed upon his execution a state-
ment that the shares named in the certificate are taken on the
execution or levied by virtue of the execution.   To avoid,
however, any embarrassment which might arise from a trans-
fer of the stock upon the books of the company after the pre-
sentation of the execution and before the delivery of the
certificate mentioned in section 55, it is provided in section

53, that when the officer holding the execution has delivered to a proper officer of the corporation "an attested copy of the execution," the property "shall be *considered as seized* on execution;" and this although it has not as yet been actually seized, as it must be before sale, by means of the provisions contained in section 55; and thus a constructive levy may be accomplished before the actual seizure—before the sheriff comes into possession of the certificate mentioned in that section.

The property of a stockholder consists of his right to a share in the net assets of the corporation, proportionate to the number of shares to which he has title. He has not, personally, a right as such shareholder to the custody or manual possession of any part of such assets. The corporation has the custody of the whole, and holds possession of his share for him. His title is evidenced by his stock certificates. This title can be passed from him to another only by a transfer thereof upon the stock books of the corporation. The corporation holds possession of each share of each stockholder in whose name the stock stands on the books of the corporation. The possession of the corporation, as to the share of each stockholder, is, in one sense, the possession of the shareholder, and is the only possession which a shareholder can lawfully have, and is the only possession which any grantee of any shareholder can acquire; and such possession by a vendee of a shareholder can only be obtained by a transfer of the stock to him *upon the books* of the corporation. Until that transfer be made, the possession of the corporation is the possession of him in whose name the stock stands upon the books. The certificate of stock does not constitute property in the assets of the corporation, but is mere evidence of the title of him to whom it is issued; and such, in one sense, it represents the property.

Under this statute, when an officer holding an execution against any one in whose name shares of stock stand on the books of the company, delivers to a proper officer of the cor-

poration an attested copy of such execution, the property, from the moment of such delivery, is to be "considered as seized on execution," and from that moment the corporation is to be "considered as" in possession for the sheriff, although the sheriff has not yet the possession of anything representing the property. When the sheriff has exhibited his execution, and on demand has received from the corporation, by virtue of his execution, a certificate of the shares standing in the name of the execution debtor, from that moment the possession of the corporation becomes, in fact, the possession of the sheriff, or rather a possession for the sheriff, in whom the title to the stock, by virtue of such actual levy, is, for the time, invested. The sheriff then has all the possession which the shareholder had before the levy. By giving the certificate provided for in section 55, the corporation, in substance, agrees to hold possession for the sheriff; and when the sheriff has made the sale, the purchaser has a right, by virtue of this statute, to demand, upon filing the papers mentioned in section 56, that the corporation shall consent to hold possession for him, and that his title shall be made manifest by the necessary transfer upon the books, and by the issue of new stock certificates directly to him, for the shares sold to him by the sheriff.

We are not to be understood as holding that the officers of the corporation could lawfully be compelled to give to the sheriff the certificate mentioned in section 55, without a compliance by the sheriff with the provisions of section 53. It may well be that the officer of a corporation has the right, before giving to the sheriff a certificate of the shares held by the judgment debtor, to demand not only an exhibition by the sheriff of his execution, but that he should also, as a condition precedent, furnish to the officer of the corporation an attested copy of the execution, as a voucher, by which to vindicate his act in surrendering to the sheriff these shares of stock to be levied upon. The right to such a voucher, however, can certainly be waived, and, in our view, was waived by giving

the certificate.   After having given that certificate, it does not lie in the mouth of the corporation to object that the copy of the execution was not properly attested, or was not left with the appropriate officer.

In this case, a true copy of the execution was left by the sheriff with the proper officer of the corporation, with an indorsement showing the nature and object of his mission. It may be that the secretary might have required the signature of the sheriff to the indorsement before acting upon the demand for the certificate, but he did act without requiring further verification.

In our judgment, an actual, valid levy was accomplished when the sheriff got possession, by virtue of his execution, of the certificate of the shares standing in the name of Church, given to him by the secretary for the purpose of levy, and indorsed upon his execution that he had so levied.

We think that Adams is entitled to the writ of *mandamus* sought in the petition.

The judgment of the Appellate Court in this case is, therefore, reversed, and the cause remanded, with directions to reverse the judgment of the Superior Court of Cook county, and remand the cause to that court, that the writ of *mandamus* sought in the petition may be awarded.

*Judgment reversed.*

CRAIG, SHELDON and MULKEY, JJ.: We do not concur in this decision.