[No. 6230.]                                            ♦

ARCHULETA, ET AL. V. ARCHULETA.

1.  DIVORCE—*Alimony*—*Practice*—The better practice is to include the award of alimony in the decree of divorce; but the court may enter a decree of divorce, reserving the question of alimony to a future day.   The award of alimony whenever made, is regarded as part of the decree of divorce, an incident, of which the other is principal—(603).

3.  ——*Appeal from Decree of Divorce*—*Effect*—An appeal from the decree of divorce, in such case, stays all proceedings in the district court, relating to the award of alimony, even though in the decree of divorce the court expressly reserves the question of alimony—(604).

A decree awarding alimony pending such appeal is void, no matter what may be the result of the appeal—(605).

3. REFEREE—*When the Court May Appoint*—Under the provisions of Rev. Code secs. 222, 223, the court has no power, without the consent of parties, to appoint a referee to try and determine the issue whether conveyances made by one of the defendants to others were fraudulent as to plaintiff—(605).

4. ——*Consent by Appearance*—But if the parties appear before the referee and participate in the trial without objection they are estopped to question the appointment—(606).

5. JUDGMENT—*Void—Due Process of Law*—A judgment which assumes to divest the private property of one not a party to the cause is void—(607).

6. PARTIES—*Indispensable*—Where it is sought to divest one of his title to property he must have due notice of the proceeding and opportunity to defend. He is an indispensable party, independent of any provision of statute—(608).

*Appeal from Denver District Court.*—HON. BOOTH MALONE, Judge.

Messrs. HAYT, DAWSON & WRIGHT and Mr. CHARLES A. JOHNSON, for appellants.

Mr. J. H. GABRIEL and Messrs. McKNIGHT & HENRY, for appellee.

Mr. JUSTICE GARRIGUES delivered the opinion of the court:

1. Joseph Presley Archuleta and wife lived in Archuleta county, where they owned lands, horses, cattle, sheep, stock and other property. Later, they established their residence in Denver, where she brought, in the district court, a suit for divorce and alimony. A jury trial resulted in the court awarding her a decree of divorce, permanent alimony, and counsel fees, but reserving the right to fix the amount. From this decree an appeal was perfected to the supreme court. Before the divorce trial, she filed a supplemental complaint in the case against J. M. Archuleta, Jr., and The Archuleta Mercantile Com-

pany, of Archuleta county, for the purpose of reaching property in that county which she claimed her husband had fraudulently transferred to defeat her collection of permanent alimony; the object being to set aside the alleged transfers in order that the property could be reached, and subjected to the payment of any alimony she might obtain. The new defendants were served with summons in the county of their residence, and after motions for a change of venue were overruled, they answered, putting in issue the allegations of the supplemental complaint. After the divorce trial, the court, upon its own motion, referred to a referee for trial and determination, the issues raised by the supplemental complaint and answer, and the fixing of the amount of permanent alimony and counsel fees. The referee tried these questions, made his final report, and the court entered judgment thereon, while the divorce issue was pending in the supreme court.

Three questions are presented: First, had the court and referee power to proceed with the reference while the appeal from the divorce decree was pending in the supreme court? Second, could the court upon its own motion, refer this issue to a referee? Third, is the judgment void because indispensable parties were omitted?

2. After the verdict in a divorce case, the court, if it decides a divorce will be granted, ought to settle the amount of permanent alimony before entering the divorce decree. Ordinarily, it will be found the better practice to include the alimony judgment in the divorce decree. The defendant's estate is usually the chief factor in determining the amount of permanent alimony, which being generally allowed out of his estate, it seems logical, in order that the court may act intelligently, that the value of his estate should be ascertained before settling the

amount of alimony. We do not wish to be understood that it would be error to pursue a different course. The court, in its discretion, could enter the divorce decree and reserve settling the alimony for some future time; if it did this, however, and the defendant perfected an appeal to the supreme court from the divorce decree before the alimony was settled the appeal would suspend further proceedings in the trial court while it was pending. The divorce decree is the principal thing. The judgment for alimony is incidental; and whether they are entered separately or together, they are treated as part of the same decree. Alimony being consequent upon obtaining a divorce, there can be no judgment for alimony without a divorce decree, though they may be and generally are entered together. The incident cannot exist without the principal.

While the divorce case was pending in the supreme court, the district court had no jurisdiction to proceed until the appeal was determined. Plaintiff was not entitled to a judgment for permanent alimony until she obtained a divorce, which she could not have so long as the appeal from the divorce decree was pending. Whether or not she would obtain a divorce, depended on the result of the appeal, the perfecting of which suspended the right of the district court to proceed while it was pending. Suspending the divorce decree by appeal, suspended the right to try the issues raised by the supplemental complaint and answer, or to fix the amount of alimony. Reserving in the decree the right to fix the amount of alimony at a future time, did not give the court jurisdiction to determine that question while the divorce decree was suspended by an appeal to the supreme court. The lower court could not restrict the effect of the appeal by a reservation in the decree. As long as the appeal was

pending, it suspended the jurisdiction of the court to proceed; it therefore follows that the proceeding before the referee and the judgment based on his report were void, and being void when entered, remained so. They could not be void if the judgment was reversed and valid if it was affirmed.—*Cralle v. Cralle,* 81 Va. 773; *King v. King,* 42 Mo. App. 454; *Lewis v. Lewis,* 20 Mo. App. 546; *Allen v. Allen,* 80 Ala. 155; *Jenkins v. Jenkins,* 91 Ill. 168; *Lake v. Lake,* 17 Nev. 243; *State v. Philips,* 32 Fla. 403.

3. J. M. Archuleta, Jr., and The Archuleta Mercantile Company were made defendants, and brought in by notice before the divorce trial, on a supplemental complaint, alleging that J. P. Archuleta had conveyed to The Archuleta Mercantile Company his lands, cattle and horses in Archuleta county, and had conveyed to J. M. Archuleta, Jr., 155 shares of the capital stock in The Archuleta Mercantile Company; that these conveyances were made in fraud of plaintiff's rights, with intent to defeat her in the collection of alimony. The issues affecting the new defendants were these alleged fraudulent conveyances to them. The court upon its own motion appointed a referee with power to hear, try and determine all the issues on the supplemental complaint, whether of law or fact. The referee, after taking voluminous testimony, found these conveyances were fraudulent and void.

The new defendants did not consent to the reference, and the court had no authority under the code to enter the order upon its own motion. Such a course was in direct violation of the provision of the code which expressly says that before the court can appoint a referee with such power, the parties must agree to the appointment, and the agreement must be filed with the clerk

or entered in the court's minutes. No doubt if one voluntarily appears before a referee, introduces evidence, cross examines witnesses, or participates generally in the trial without objection, he ought to be estopped from saying the reference was made without his consent. His voluntary appearance and general participation in the trial before the referee would be sufficient; but here the record shows affirmatively that the court acted upon its own motion, and not upon consent filed with the clerk or entered on the minutes, and that strenuous objections were made before the referee to proceeding with the trial on this account. These defendants had no interest in the divorce case. So far as they were concerned, setting aside the alleged fraudulent conveyances was the only issue, and the court was powerless, upon its own motion, to refer this issue without their consent in writing filed with the clerk, or entered on the minutes.—*Terpening v. Holton,* 9 Colo. 306; 24 Am. & Eng. Enc. 226; 17 Enc. Pl. & Pr., 993; *Wheeler v. Falconer,* 30 N. Y. Super. Ct. 45; *Morrison v. Horrocks,* 40 Hun. 428; *Bushnell v. Eastman,* 2 Abb. Prac. (N. S.) 411; *Draper v. Day,* 11 How. Pr. 439; *Verplanck v. Kendall,* 45 N. Y. Super. Ct. 525; *Quinn v. McDonald,* 10 N. Y. Supp. 855; *Seaman v. Mariani,* 1 Cal. 336; *Garcie v. Sheldon,* 3 Barb. 232; *Crumbie v. Ry. Co.,* 83 Hun. 1, 31 N. Y. Supp. 497.

4. The supplemental complaint charged that J. P. Archuleta caused his 155 shares of stock in The Archuleta Mercantile Company to be transferred to J. M. Archuleta, Jr. The evidence shows, and the referee reported that this stock was originally owned by J. P. Archuleta, evidenced by certificate No. 12 of date September 12, 1903; that it stood in his name on the books of the company until October 14, 1904, when he assigned it to Marcelino and Fidel Archuleta by the following endorsement:

"For value received, I hereby sell, assign and transfer to Marcelino Archuleta and Fidel Archuleta, the shares of stock within mentioned, and hereby authorize the transfer of the same upon the books of the company.

Witness my hand and seal this 14th day of October, 1904.

J. P. ARCHULETA."

That on the same day it was transferred to them by issuing a new certificate, No. 20; and these shares of stock now stand on the books of the company in their names, evidenced by certificate No. 20. They were not made parties, had no notice of, and took no part in the suit. They were given no opportunity to defend their title; but notwithstanding this, the court, without their presence and without notice, adjudicated their rights, and declared in its final judgment they had no title to this stock, and ordered the company to cancel certificate No. 20, and issue new certificates in its place for this stock, to Mrs. Archuleta and her attorneys in payment of alimony and counsel fees. This judicial order is void, because: First, it deprives these stockholders of their property without due process of law. Second, they were necessary and indispensable parties before any judgment of this kind could be entered.

The federal constitution provides:

"Nor shall any state deprive any person of life, liberty or property, without due process of law, nor deny t oany person within its jurisdiction the equal protection of the laws."

The state constitution provides:

"That no person shall be deprived of life, liberty or property without due process of law."

The stock standing in the names of these stockholders could not be arbitrarily confiscated by an order of

court. We live in a constitutionalism, and not an absolutism. Due process of law affords to every one the right to have the complaint, in any proceeding affecting his property, made in a court of competent jurisdiction, to have due notice thereof, and opportunity to defend.—*Brown v. Denver*, 7 Colo. 305; *Windsor v. McVeigh*, 93 U. S. 274; *Pennoyer v. Neff*, 95 U. S. 714; *Scott v. McNeal*, 154 U. S. 34; *Webster v. Reid*, 52 U. S. 436; *Meyers v. Shields*, 61 Fed. 718; *People v. Supervisors*, 70 N. Y. 229; *Stuart v. Palmer*, 74 N. Y. 183; *State v. Billings*, 55 Minn. 467; *Zeigler v. R. R. Co.*, 58 Ala. 594.

Lack of indispensable parties, presents for consideration in another form, the question of the court's authority to enter any judgment affecting this stock. It was impossible for the court to make an order determining the ownership without prejudice to the rights of these stockholders; therefore, under our code, the court had no jurisdiction to proceed without them.—*Allen v. Tritch*, 5 Colo. 222; *Snyder v. Voorhees*, 7 Colo. 296; *Pollard v. Lathrop*, 12 Colo. 171; *Seymour v. Fisher*, 16 Colo. 190; *Homestead Co. v. Reynolds*, 30 Colo. 330; *Peck v. Peck*, 33 Colo. 421; *Bank v. Davidson*, 7 Colo. App. 91; *Williams v. Bankhead*, 86 U. S. 563; *Mallow v. Hinde*, 25 U. S. 193.; *Calhoun v. Fletcher*, 63 Ala. 574; *Theurer v. Brogan*, 41 Ark. 88.

The code provision, however, is only declaratory of the immutable law. It would be the same without a code. The court could enter no judgment, ordering the cancellation of this certificate and a transfer of this stock, without affecting the rights of these stockholders. They were therefore necessary and indispensable parties by reason of natural justice, and any judgment entered without them, so far as it affects this stock, is void not only as to them, but also as to the parties before the

court.—*New Orleans W. W. v. New Orleans,* 164 U. S. 471; *California v. S. P. Co.,* 157 U. S. 229; *Greeley v. Lowe,* 155 U. S. 58.

*Reversed and remanded.*

Decision *en banc.*

CHIEF JUSTICE CAMPBELL and Mr. JUSTICE WHITE not participating.

Mr. JUSTICE MUSSER concurs in the reversal of the judgment on the ground that the Archuleta children, in whose names the stock stood, were not made parties. As to the other matters discussed, he expresses no opinion.