## UNITED STATES v. MARHOLD et al.

District Court, D. New Jersey. April 13, 1927.

1. Intoxicating liquors ⬅➡275—Identity of premises and happenings therein held sufficiently established in nuisance abatement proceedings (National Prohibition Act, tit. 2, § 22 [Comp. St. § 10138½k]).

Evidence of identity of premises where government agents bought liquor and of happenings therein *held* sufficient in proceeding to abate liquor nuisance, under National Prohibition Act, tit. 2, § 22 (Comp. St. § 10138½k).

2. Intoxicating liquors ⬅➡271—Nonjoinder of real owner and his innocence of wrong does not preclude right to injunction in liquor nuisance abatement proceedings (National Prohibition Act, tit. 2, § 22 [Comp. St. § 10138½k]).

That real owner of premises is not a party to proceedings to abate liquor nuisance under National Prohibition Act, tit. 2, § 22 (Comp. St. § 10138½k), and is innocent of wrongdoing, does not preclude government's right to remedy sought, in view of provision allowing owner to give bond.

3. Intoxicating liquors ⬅➡260—Evidence of single sale of liquor in place fitted therefor warrants finding of common nuisance (National Prohibition Act, tit. 2, § 21 [Comp. St. § 10138½ii]).

Evidence of a single sale of liquor, if made in a place maintained and fitted for such purpose, is sufficient to support a finding of common nuisance under National Prohibition Act, tit. 2, § 21 (Comp. St. § 10138½jj).

In Equity. Suit by the United States against Fred Marhold and another to abate a nuisance. Decree for plaintiff.

Walter G. Winne, U. S. Atty., of Hackensack, N. J. (Harlan Besson, Asst. U. S. Atty., of Hoboken, N. J., of counsel), for the United States.

Grossman & Kwalick, of Elizabeth, N. J. (Harry Grossman, of Elizabeth, N. J., of counsel), for defendants.

RUNYON, District Judge. This proceeding is instituted for the purpose of abating a nuisance alleged to have been maintained at No. 313 Morris avenue, in the city of Elizabeth, N. J., and rests upon the authority conferred by section 22 of title 2 of the National Prohibition Act (Comp. St. § 10138½k).

The evidence produced on behalf of the government tended to show that prohibition agents entered the said premises on December 14, 1925, found a place equipped in all respects as a saloon, and bought and paid for whisky therein. Supplementing the testimony of one of these witnesses, Hope by name, was the testimony of several citizens living in the neighborhood of the said premises, who told of having seen men on various occasions, both before and after the bill herein was filed, enter said premises in a sober condition and later emerge therefrom apparently drunk.

[1] Though it was sought by the defense to show that the government agents made their purchase in some other place, the testimony of Hope, buttressed as it was by the production of his original notes, convinced me as to the identity of the premises and the proceedings had therein, while the evidence offered by the neighbors appealed to me as being direct and convincing, both as to the nature of the place and the usages which made it a nuisance.

It is also contended that the defendant Marhold transferred his business to one Saul Epstein, from whom he had purchased it, a

short time after the alleged sale was made, but before the bill herein was filed. The evidence in support of this contention is not convincing, inasmuch as the transfers were not made matters of record, and, even granting that an actual transfer, valid on its face, were made, there remains also the fact that Marhold continued in his association with the business, allegedly as an employé, and that during this period the place maintained its unsavory character as a rendevous for patrons whose entrance therein was staid and sober, but whose exodus oftentimes bore unmistakable signs of inebriety.

[2] These circumstances lessen the force of any contention that the procedure is faulty and inequitable, because Epstein was not made a party to the proceeding and was innocent of any wrongdoing. And, granting that Epstein was not made a party and was innocent of wrongdoing, the existence of such a state of facts would not preclude the government's right to pursue to a conclusion the remedy now sought, which is directed primarily against the premises.

"It is the contention of appellants that the property of an innocent owner cannot be ordered closed after the ejectment of the tenant and the abatement of the nuisance. There would be much force in this contention, if it were not for the provision allowing the owner to bond the injunction. This is a reasonable requirement as a guaranty of good faith, and to insure that the property will not again become a nuisance, for a period sufficient for it to lose its character and reputation as a place where liquor may be purchased. This provision affords ample protection to an innocent owner." Schlieder v. U. S. (C. C. A.) 11 F.(2d) 345, 347.

The relationship between Epstein and Marhold, as brought out in the evidence, is so intimate, however, as to make questionable any thought of the innocence of Epstein, as a quotation from the brief of defendants' counsel will show:

"The evidence on behalf of the defendant Marhold shows that in February, 1925, he purchased the business at 313 Morris avenue, Elizabeth, N. J., from one Saul Epstein for the sum of $1,500, paying $500 cash, and the balance he secured by delivering to Epstein his note for $1,000, and that the said Saul Epstein, who was the lessee of the premises in question, sublet to Marhold the premises No. 313 Morris avenue; that in January, 1926, Marhold came to the conclusion that he could no longer continue to do business in the premises No. 313 Morris avenue; that the income of that business was not sufficient to pay the expenses and give him enough to live on, and that he informed Epstein of that fact, and in January, 1926, Epstein and Marhold met, Epstein surrendered to Marhold the note for $1,000, and Marhold returned to Epstein the bill of sale originally given by Epstein to Marhold, and Marhold further delivered to Epstein the possession of the premises No. 313 Morris avenue; and that thereafter Marhold had nothing further to do with the business in question, except that, some time subsequent to the retransfer to Epstein, Marhold was employed by Epstein to run the lunch counter."

This would seem to show that Epstein in any event had a condition attached to his sale of the business in the form of a note, and, shortly after the date of the alleged sale, resumed an active part in its conduct, and to me all this betokens a kaleidoscopic adroitness of transfer calculated in any crisis to provide an innocent and unserved party for the court's contemplation.

[3] With reference to the contention that a showing of recurrence or continuity is lacking, it may be said that in cases of this sort, being for the abatement of a statutory nuisance, evidence of a single sale, if made in a place maintained and fitted for such purpose, is sufficient to support a finding of common nuisance under the twenty-first section of title 2 of the National Prohibition Act (Comp. St. § 10138½jj). See Singer v. U. S. (C. C. A.) 288 F. 695.

In short, defendant Marhold makes his claims by reason of the facts that about ten months before the alleged sale he bought the business from Epstein, and about one month after such sale he sold it back to Epstein; that Epstein has since hired him as lunch counter man; that, while Epstein had nothing to do with the business when the sale was made, it is Marhold who now has nothing to do with it in a proprietary way.

The evidence produced on the part of the government was worthy of belief, as I view it, and upon the basis of such evidence a decree will be made closing the premises.