No. 12,046.

GASKINS v. THE PEOPLE.

Decided November 26, 1928.

·Mr. Philip S. Van Cise, Mr. Kenneth W. Robinson, for plaintiff in error.

Mr. William L. Boatright, Attorney General, Mr. William W. Gaunt, Assistant, for the people.

*En Banc.*

Mr. Justice Campbell delivered the opinion of the court.

Our opinion in a companion case, No. 12,047, *Mongone, et al v. People,* 84 Colo. 516, 271 Pac. 617, that was prosecuted by an alleged owner and the tenant, and in which we affirmed an abatement decree against them for maintaining a nuisance in a building on premises owned in part by another, who prosecutes the writ in the case now before us, should be read in connection with this opinion. This writ of error, to the same decree affirmed by us in the other case, is prosecuted by Emma Gaskins, who, as the complaint says, is one of the owners of the property which was declared by the district court to be a nuisance. She was not, as were the other alleged owner and the tenant, served with process, either personally or by pub-

lication, did not appear, and was not represented by counsel, yet the court rendered an abatement decree against her and the other alleged owner and occupying tenant, who maintained and conducted a nuisance therein. As to the owner, plaintiff in error Gaskins, who was not served with process and did not appear, we think her inclusion in the decree was not proper because the record on its face shows she was not a party to the action. The evidence, however, clearly shows that a nuisance was maintained and conducted by her tenant or tenants and the other alleged owner upon the premises and the decree of the court as to them, as we have already determined in the other case above referred to, was justified and was, and is, valid.

Gaskins, as owner, is relieved only personally from the provisions of the decree, but her property is bound by it. If the action had been brought against the occupying tenant or tenants alone, and the evidence showed that they maintained a nuisance thereon, an injunction order abating the nuisance would be good, and the provisions of the decree closing the premises for one year valid, notwithstanding the owner of the building was not a party to the action. Counsel for Gaskins say, however, that in *Gregg v. People,* 65 Colo. 390, (176 Pac. 483) at page 394, we held that where a tenant maintains a nuisance on the leased premises it is essential to an abatement order that the owner knowingly permitted the premises to be so used, or himself connived therein. The supposed declaration by us was in a case where the only defendant in the abatement action was the owner himself, and he, not a tenant, was charged with maintaining the nuisance, and, of course, the evidence must show his guilt. We did not there say that where a defendant tenant maintains a nuisance the abatement order against him is not binding against the owner's property. The reasoning in the Gregg opinion is to the contrary, and it has been so held repeatedly by the federal courts under the National Prohibition Act, the provisions of which, as

to abatement, are quite similar to those in our statute concerning nuisances.

In *Schlieder v. United States,* 11 Fed. (2d) 345, the United States Circuit Court of Appeals of the Fifth Circuit, in considering the contention that the property of an innocent owner cannot be ordered closed after the ejectment of the tenant and the abatement of the nuisance, said that there would be much force in this contention were it not for the provision of the federal statute allowing the owner to bond the injunction and that this provision, although the owner is not made a party to the suit, affords ample protection to him in case his property is adjudged to be a nuisance because of the unlawful acts of his tenants, by giving a bond—which is quite similar to the bond provided for in our statutes—that he would not permit any further unlawful use of the property. Our statute, like the federal statute, provides that after the tenant has been evicted and the nuisance abated, the owner of the building, if he has not been guilty of contempt of court in the proceedings, and appears and pays all costs, fees and allowances which were made a lien on the building, and files a bond in the full value of the property, conditioned that he will immediately abate the nuisance that may exist and prevent the same from being established or kept thereat within a period of one year thereafter, the court or judge may, if satisfied with the owner's good faith, order the premises, which were closed under the order of abatement, to be delivered to the owner and the order of abatement cancelled so far as the same may relate to the property itself. In the Schlieder case, *supra,* the court said this provision of the statute afforded an ample remedy to the owner of property declared to be a nuisance, conducted or maintained by his tenant, and though the owner is not made a party to the abatement suit itself, his rights are preserved by the provision concerning the bonding of the injunction. We think that decision is applicable here.

In *Grosfield, et al. v. United States,* 48 Sup. Ct. Rep. 329, the Supreme Court of the United States in an opinion by Mr. Justice Sutherland, held that: "The purpose of the provision of the (National Prohibition) statute authorizing an injunction against occupancy and use is not punitive but preventive, *Murphy v. United States,* 272 U. S. 630, and it is no answer to the suit to say that the owner did not participate in the criminal act of the tenant." The learned judge further said: "That the tenant may have been ousted and the illegal use of the premises ended before the decree is not conclusive, if the evidence furnish reasonable ground for apprehending a repetition of such use," citing authorities. And the court in further answer to the contention of the owner, said that it is "still within the power of the district court to permit the premises to be occupied or used upon the giving of a bond with sufficient surety in the amount and upon the conditions prescribed by the statute," citing with approval the Schlieder case, supra. In the Grosfield case, supra, the action was brought against both the tenants and the owner but dismissed as to the tenant and the decree passed against the owner. In *United States v. Marhold, et al.,* 18 Fed. (2d) 779, which was a case against the tenant of a building, in which the owner was not a party, and was innocent of the wrongdoing, it was held that the existence of such a state of facts would not preclude the government's right to pursue to a conclusion the remedy sought, which is directed primarily against the premises, because the owner had a sufficient remedy under the provisions of the act by protecting his interests by bonding the injunction.

In *Denapolis v. United States,* 3 Fed. (2d) 722, 723, it was said: "It is of no concern to the lessees that the owner of the premises was not made a party defendant. The suit is aimed at the unlawful use irrespective of ownership. At the same time the statute confers upon the owner the right to procure possession of his property by giving bond that intoxicating liquors will not be

manufactured, kept, or sold thereon.'' This principle is applicable here. Emma Gaskins, although she was not made a party, is presumed in law to know what use her tenant is making of her property. It was in fact being used by her tenants for an illegal purpose and, therefore, subject to abatement as a nuisance, but the owner, notwithstanding that fact, may repossess herself of the premises by giving a bond that they will not thereafter be devoted to an unlawful use; hence the abatement order as to her is binding though she was not a party to the suit in which it was made. In *Farrell v. United States,* Circuit Court of Appeals, Third Circuit, 21 Fed. (2d) 318, it was held that, as stated in the syllabus: ''Knowledge of the owner that premises are used for illegal purpose is not essential to their abatement as nuisance.''

It should be borne in mind that one has no property right in a nuisance, or in property that is used in maintaining or conducting the same. A nuisance may be both public and private. The state under, or by direction of, its chief magistrate, a county by its sheriff, a municipal corporation by its police, may summarily, and without resort to legal proceedings, by their own act abate a nuisance. And a private individual may do so, if he has suffered special injury from it. 29 Cyc. p. 1143, et seq. *Denver v. Mullen,* 7 Colo. 345, 3 Pac. 693. Of course, one who abates either a public or private nuisance does so at his peril, and assumes all liability for exceeding his legal right. But if the thing abated is, in fact and in law, a nuisance, he is justified in abating it without resort to a legal proceeding. If such be the law, and we find no case to the contrary, then cases like *Windsor v. McVeigh,* 93 U. S. 274, which hold that notice to a party with opportunity to defend is necessary, are not applicable or controlling as to judgments or decrees of abatement of a nuisance against a defendant who permits his property to become a nuisance and used as such. *Grosfield, et al v. United States, supra.* But if this were not the law, the defendant here, under the facts of this case,

may not complain that preliminary notice was not given to her before the abatement decree was rendered, for the alleged owner Mrs. Gaskins was beyond the jurisdiction of the court at the time the action was begun and the abatement order entered, and the district attorney was not obliged to wait indefinitely for her return when she might be personally served before proceeding against the tenants who were making an illegal use of her property of which she was supposed to know. At all events, she has her remedy now by bonding this injunction and repossessing herself of her property.

The effect of our decision in this case as to the owner who, though named in the complaint as a party defendant and one of the owners, was not served, and did not appear at the trial and was, therefore, not a party, is to relieve her personally from the decree. The abatement order, however, stands against her property. The owner is at liberty to avail herself, if she sees fit, of her right to bond the injunction and repossess herself of the premises, if she can convince the district court of her good faith and that she will carry out the court's order.

The judgment of abatement is therefore affirmed, but it shall not be construed as affecting the defendant Gaskins personally, but only as above stated, as to her property. Modified and, as modified, affirmed.

MR. CHIEF JUSTICE DENISON, MR. JUSTICE BUTLER and MR. JUSTICE WALKER dissent.

MR. CHIEF JUSTICE DENISON dissenting.

I cannot concur with the majority opinion.

The people had a decree against Gaskins which held her house to be a nuisance and closed it for one year without service on her in any manner and without notice to her of any kind. She was a resident of California. She had no opportunity to defend.

1. Section 45, Code of 1921, seems to me to govern an action of this sort. It is a proceeding in equity, the whole

Code obviously and necessarily applies to all bills in equity; certainly, then, the section on service of summons applies here, and service by publication should have been had and without that service the decree is void.

2.   But even if the statute provided that there need be no service, the decree without service would still be void, because due process of law requires a notice with opportunity to defend.   The decisions are too numerous to cite, but here are some of them.   *Windsor v. McVeigh,* 93 U. S. 274; *McVeigh v. U. S.,* 11 Wall. 259, 267; *People v. Lee,* 72 Colo. 598, 213 Pac. 583, 587; *Londoner v. Denver,* 210 U. S. 373; *Pennoyer v. Neff,* 95 U. S. 714; *Dartmouth College v. Woodward,* 4 Wheat. 518; *Brown v. Denver,* 7 Colo. 305, 311; *Jenks v. Stump,* 41 Colo. 281, 286, 288, 93 Pac. 317; *Archuleta v. Archuleta,* 52 Colo. 601, 608, 123 Pac. 821.

The point is made that this was an action in rem and therefore no notice was necessary, but the case of *Londoner v. Denver, supra,* was an action to condemn land for park purposes and it was held the condemnation could not be had without service of summons upon owner. The final and conclusive authority on this point, however, is *Windsor v. McVeigh,* 93 U. S. 274, 277–279, which was a case which involved the forfeiture by the court of land belonging to one in rebellion against the United States.   The forfeiture was held void because, although the owner of the land had notice, he was denied a hearing.

On page 277 the opinion, referring to *McVeigh v. U. S., supra,* says "Mr. Justice Swayne said: 'The order in effect denied the respondent a hearing.   It is alleged he was in the position of an alien enemy, and could have no *locus standi* in that forum.   If assailed there, he could defend there.   The liability and right are inseparable. A different result would be a blot upon our jurisprudence and civilization.   We cannot hesitate or doubt on the subject.   It would be contrary to the first principles of the social compact and of the right administration of justice.' * * *'"

"The principle stated in this terse language lies at the foundation of all well-ordered systems of jurisprudence. Wherever one is assailed in his person or his property, there he may defend, for the liability and the right are inseparable. This is a principle of natural justice, recognized as such by the common intelligence and conscience of all nations. A sentence of a court pronounced against a party without hearing him, *or giving him an opportunity to be heard,* is not a judicial determination of his rights, and is not entitled to respect in any other tribunal."

And again on page 279. "The jurisdiction acquired by the seizure is not to pass upon the question of forfeiture absolutely, but to pass upon that question *after opportunity has been afforded to its owner and parties interested to appear and be heard upon the charges. To this end some notification of the proceedings, beyond that arising from the seizure, prescribing the time within which the appearance must be made, is essential.* Such notification is usually given by monition, public proclamation, or publication in some other form. The manner of the notification is immaterial, but the notification itself is indispensable." So here: let us concede that the people had a right to seize Gaskins' property and hold it, restraining the nuisance till proper service, yet there could be no valid judgment against her without notice and opportunity to answer.

The only cases strictly in rem, that I have been able to find, where actual notice to owner is not required, are admiralty cases where the ship is the defendant; but such cases are sui generis, not analogous to the present situation, but rest on reasoning and principles that have no application here.

Cases in the U. S. District Court and the Circuit Court of Appeals seem to sustain this judgment, but we are not willing to follow them. They seem to violate the Fourteenth Amendment as construed in *Windsor v. McVeigh.* The case of *Grosfield v. U. S.,* 48 Sup. Ct. Rep. 329, 72

L. Ed. 392, seems to us not to sustain the judgment. The case was brought against the owner and against the tenant. It was dismissed as against the tenant and prosecuted as against the owner. The owner answered. The opinion says "the only question for our consideration is whether the evidence submitted to the district court is sufficient to justify the decree." The opinion then considers the evidence and answer and concludes that the owners were guilty and not in good faith. There was no question of taking property without notice to the owners.

It is said that the right of the owner to give a bond as provided in C. L. §§ 6238 and 6239, gives him sufficient protection, but since that right is conditioned upon the payment of costs and allowances that have been adjudged in the action without notice to the owner, it is hard to see how his rights are protected. He is obliged to pay part of the judgment against somebody else, rendered without notice to him, in order to gain possession of his property which has been taken from him without any opportunity to be heard.

The judgment against Gaskins should be reversed with direction to proceed to get service according to the Code or to dismiss the case.

Mr. Justice Butler and Mr. Justice Walker agree with this dissent.