# No. 15,940.

ATKINSON *v*. CITY AND COUNTY OF DENVER ET AL.

(195 P. [2d] 977)

Decided June 14, 1948.

Mr. OMAR E. GARWOOD, for plaintiff in error.

Mr. J. GLENN DONALDSON, Mr. ABE L. HOFFMAN, Mr. WORTH ALLEN, for defendants in error.

*En Banc.*

MR. JUSTICE JACKSON delivered the opinion of the court.

PLAINTIFF in error, who was plaintiff in the trial court, brought suit against the City and County of Denver, and named various individual defendants. The latter are officers or employees of Denver. Plaintiff sought: 1. A declaratory judgment holding a certain ordinance, No. 54, passed by the city council of the City and County of Denver in November, 1943, to be unconstitutional and void; 2. A temporary and permanent injunction restraining defendants from shooting, killing, harming or destroying plaintiff's squirrels on plaintiff's premises or elsewhere, and from threatening to destroy same, and restraining them from discharging firearms at domestic animals in the vicinity of plaintiff's residence; and 3. Damages in the sum of $1,000. The trial court held the city ordinance valid and constitutional; denied the application for injunction and claim for damages; and entered a judgment of dismissal. Plaintiff brings the cause here seeking a reversal of the judgment.

By section 1 of the ordinance that gave rise to this litigation the city council determined that squirrels had become very numerous in those portions of Denver com-

prising councilmanic districts 4, 5 and 6; that in those districts they destroy annually thousands of small birds, birds' eggs and nests; that they cause hundreds of dollars of damage annually to property and buildings, and injure or destroy many trees, shrubs and gardens each year; that as a result of their great number and destructive tendencies, squirrels are declared to be a nuisance in the three districts named.

Section 2 of the ordinance provides that upon complaint to the Department of Safety and Excise that squirrels are committing in those three councilmanic districts the depredations described in section 1, the department is authorized and directed to investigate such complaint and, if found to be true, to take such action as shall be deemed expedient, proper and advisable effectively to abate said nuisance or correct said condition.

The court found:

1. That plaintiff made pets of squirrels, fed them and raised some. But none of the squirrels which he claimed belonged to him, which were killed by the police officers, were confined or kept on his premises. He claimed to own some eighteen or twenty squirrels that roamed the neighborhood for blocks around without any mark of identification. They were therefore incapable of identification except possibly by plaintiff.

2. The evidence showed that the squirrels do destroy, injure and damage trees, gardens, shrubs, awnings, bird nests, young birds, thousands of bird eggs every season, and when numerous, constitute a nuisance.

3. That in November of 1943 the Council found that in aldermanic districts Nos. 4, 5 and 6 squirrels running at large were so numerous and so destructive as to be a nuisance, and that ordinance No. 54 was then enacted authorizing the defendant Manager of Safety and Excise to investigate the facts where complaint was made, and "to take such action as shall be deemed expedient to abate said nuisance."

4. During the times covered by the pleadings and the evidence squirrels in these districts were so numerous, and caused so much property damage and annoyance as to constitute and be a nuisance.

5. That under the Constitution and laws of Colorado, a municipality has the power to abate such nuisance; that this power was exercised by the council in enacting ordinance No. 54, and that the ordinance is valid and constitutional, and the fact that it was made to apply to only three aldermanic districts instead of the nine, which make up the entire city, is not important or relevant because ordinances that apply only to parks or parts of the city have been enacted and uniformly sustained by the courts.

6. That a squirrel is by nature a wild animal. The statutes of Colorado provide that the ownership of wild animals, such as squirrels, is in the state of Colorado. Plaintiff did not obtain permission from the state to acquire or possess the squirrels; therefore, he had no property rights in the squirrels involved in this proceeding and has no cause to complain. '35 C.S.A., c. 73, §§29, 31; *People v. Williams,* 61 Colo. 11, 15, 155 Pac. 323.

7. That under the authority of the ordinance Denver's department of safety and excise proceeded to enforce it and shot and killed a number of squirrels in the three named councilmanic districts, among which were several which plaintiff claimed belonged to him. That no squirrels were killed by the police officers on plaintiff's premises.

8. Police shot and killed squirrels that they found running at large in said districts after complaints had been made of their activities, and what police officers did was done in the performance of their duty as governmental agents for the protection of the public and property rights in general.

9. That the burden was on plaintiff to prove his ownership of the squirrels in question at the time and place they were killed; that the evidence fails to prove this,

but it does show that the squirrels were killed while running at large as wild animals; that the burden was on plaintiff to prove that the said squirrels did no damage and were not a nuisance. This he failed to do, for the evidence disclosed that the squirrels did cause injury and substantial damage to property, and disturbed and annoyed people in the peaceful enjoyment of their homes; that the ordinance is a proper instrument for the regulation of such a nuisance in a just and practical way, and its enforcement abates the nuisance, stops the annoyance and disturbance, and in so doing promotes the peace and comfort and happiness of the people of Denver.

10. All of the issues are found to be in favor of the defendants and against the plaintiff.

Plaintiff's first three specifications of error relate to the three portions of the complaint, namely: (1) That the court erred in holding ordinance No. 54 valid and constitutional; and (2) in denying the application for injunction; and (3) in refusing an award of damages. The fourth specification alleges error in dismissing the cause, and the fifth that the court erred in entering judgment in favor of defendants and against plaintiff. The sixth specification is, "The trial court erred in holding that plaintiff's squirrels were killed while running at large as wild animals," and the seventh reads, "The trial court erred in holding that plaintiff's squirrels caused damage and injury, when in truth and fact the evidence showed no damage or injury by plaintiff's squirrels." These specifications give a clearer idea of plaintiff's theory.

Plaintiff, although not claiming that squirrels are by nature domestic animals (domitae naturae) and admitting that in their native state they are wild animals (ferae naturae), argues that wild animals are themselves divided into two classes: 1. Those that remain wild; and 2. Those that have become reclaimed or domesticated. It is in the latter class that he places the eighteen to twenty squirrels which the trial court, in its findings, found

plaintiff claimed to have domesticated. By virtue of his "taming" them, he claims a property right in them. He testified that he had been offered fifty dollars for a pair of squirrels, and that on that basis the squirrels which he had domesticated and could identify and call by name were valued at $450. He admitted, however, that he had not undertaken to sell any of the squirrels which he had so domesticated because of the prohibition contained in a state law, concerning which he had been informed by the State Fish and Game Department. The law to which plaintiff referred in his testimony, but to which his counsel makes no reference in his brief, includes sections 29, 31, 89, 93, 198, chapter 73, '35 C.S.A. Sections 29 and 89, supra, read as follows:

"§29. All game and fish now or hereafter within this state not held by private ownership, legally acquired, and which for the purposes of this law shall include all the quadrupeds, birds and fish mentioned in this law, are hereby declared to be the property of the state, and no right, title, interest or property therein can be acquired or transferred, or possession thereof had or maintained except as herein expressly provided. [L. '99, p. 188, §16; R. S. '08, §2739; C. L., §1443.]"

"§89. No person shall have in possession or keep or retain in captivity in any park, enclosure, lake or body of water, public or private, any living game or fish unless the person having such possession, or the proprietor of such park, enclosure, lake or body of water, shall procure a license therefor as hereinafter provided; and in any prosecution for a violation of this section the possession of any living game or fish, or the having or keeping of any such game or fish in any park, enclosure, lake or body of water shall be prima facie evidence that the same was unlawfully captured and is unlawfully held in possession. [L. '99, p. 194, §1; R. S. '08, §2761; C. L., §1466.]"

Section 93 makes violations of the provisions of the statute punishable by fine or imprisonment, or both.

Section 198 protects the right of those having fur-bearing animals in restraint or captivity.

Plaintiff relies upon the case of *Stephens & Co. v. Albers*, 81 Colo. 488, 256 Pac. 15, 52 A. L. R. 1056. There, it appeared that a semi-domesticated silver fox escaped from its confinement and was shot by a hunter who sold the pelt, with notice to the merchant that the pelt came from an escaped fox. We held that the property rights of the owner were not lost by the escape of the fox, and in reaching our conclusion in that case we stated that there was no statute or common-law principle applicable. In that case, the fox (1) was of a species not native to Colorado; (2) was of a species used in Colorado in great numbers in a commercial industry; (3) was ear-marked; (4) was kept in confinement and not allowed to roam at large; and (5) the merchant had notice that the pelt came from an escaped fox. Clearly, by reason of the diversity of facts, that case is not applicable in the instant one.

■ Colorado statutes, placing ownership and control of wild animals in the state, appear to be but the expression of both the civil and common law on that subject. There would seem to be no present law nor historical background supporting plaintiff's claim of ownership in "his squirrels"—which have been "abated or done away with" as a nuisance—or giving him the right to claim that his property was taken without due process of law. His claim for damages must therefore fail.

■ It also must fail as to the City and County of Denver for the reason that the municipality, in abating the squirrel nuisance, was acting in its governmental capacity, and is, therefore, not liable for the acts of its officers and agents in carrying out the provisions of an ordinance. *McIntosh v. City and County of Denver*, 98 Colo. 403, 55 P. (2d) 1337; *Williams v. City of Longmont*, 109 Colo. 567, 129 P. (2d) 110; *Schwalb v. Connely*, 116 Colo. 195, 179 P. (2d) 667; *City and County of Denver v. Forster*, 89 Colo. 246, 1 P. (2d) 922.

■ Nor are the police officers liable for damages in this case, for here they were obeying the lawful command of their government. *Murray's Lessee v. Hoboken Land and Improvement Co.,* 59 U. S. (18 How.) 272; *O'Reilly de Camara v. Brooke,* 209 U. S. 45, 28 Sup. Ct. 439, 52 L. Ed. 676; *George Moore Ice Cream Co., Inc. v. Rose, Collector, etc.,* 289 U. S. 373, 53 Sup. Ct. 620, 77 L. Ed. 1265.

■ We further are of the opinion that the city council has authority to declare a nuisance and provide means to abate it. The subject matter of the nuisance here is squirrels, which are members of the rodent family. Their more subterranean cousin, the rat, seems to reach the nuisance classification with greater ease. Their aquatic cousin, the beaver, also is known for—and offsetting measures are taken against—its destructive activities. Too much of any of the rodentia appears to be a detriment.

An examination of the record shows that the evidence supports the statement contained in both the ordinance and findings of the court, that the squirrels in the three aldermanic districts affected had, in fact, become a nuisance by virtue of the damage they were causing. The ordinance was therefore a reasonable and proper exercise of the legislative power. *Brophy v. Hyatt,* 10 Colo. 223, 15 Pac. 399; *Pueblo v. Kurtz,* 66 Colo. 447, 182 Pac. 884. The right of municipal officers and employees to abate such a public nuisance has been upheld by us in *Gaskins v. People,* 84 Colo. 582, 272 Pac. 662.

■ It is claimed that the ordinance in question violates the constitutional provision guaranteeing equal protection of the laws (U. S. Constitution, Amended Article XIV, §1; Constitution of Colo. Art. 2, §25), and it is asked, how can squirrels be nuisances in three political subdivisions of the city and not in the other six subdivisions? The evidence disclosed that the squirrels, spreading out from City Park, had infested the three neighboring aldermanic districts most heavily, and that

the squirrel population at the time of the enactment of the ordinance seemed to be most dense in that area.

The great preponderance of complaints came from property owners in those three districts. The city council, therefore, seems to have adopted the pragmatic method of declaring the nuisance in that zone whence most of the complaints came. Illustrations of ordinances applying to a part of a city appear in sections 699 and 700 (2d ed. rev.), vol. 2, McQuillin on Municipal Corporations. We have in fact applied the principle of limitation of areas in *Averch v. Denver,* 78 Colo. 246, 242 Pac. 47, in respect to a zoning ordinance. Similar ordinances have been upheld in the federal jurisdiction. *Northwestern Laundry v. Des Moines,* 239 U. S. 486, 36 Sup. Ct. 206, 60 L. Ed. 396.

 It also is argued that this ordinance, because it relates merely to squirrels and not to other wild animals, violates the equal protection clause of the Constitution. A case arising in this jurisdiction which would appear to answer that contention is, *Independent Dairymen's Ass'n v. Denver,* 142 F. (2d) 940, where the court said: "A legislative enactment does not violate the equal protection clause merely because it is not all-embracing. The legislature is free to recognize degrees of harm and may confine its restrictions to those classes of cases where the need is deemed to be clearest." It also has been held concerning an ordinance that, "It was sufficient to satisfy the demand of the Constitution if a classification was practical and not palpably arbitrary." *Louisville & Nashville R. R. Co. v. Melton,* 218 U. S. 36, 55, 30 Sup. Ct. 676, 54 L. Ed. 921.

We conclude that the city council of Denver had the authority to declare the squirrels a nuisance in aldermanic districts 4, 5 and 6; that an injunction against enforcing that ordinance was properly denied; that the ordinance declaring the squirrels a nuisance is constitutional and that, whether constitutional or not, plaintiff

is not entitled to damages either against the city or its employees or officers.

The judgment is affirmed.

MR. JUSTICE HAYS and MR. JUSTICE LUXFORD not participating.