MONTROSE COUNTY SCHOOL DIS-
TRICT RE–1J and the Board of Edu-
cation for Montrose County School
District RE–1J, Robert Cito, Superin-
tendent, Petitioners,

v.

Patricia LAMBERT and George
C. Price, Respondents.

No. 91SC217.

Supreme Court of Colorado,
En Banc.

Feb. 24, 1992.

Rehearing Denied March 23, 1992.

Caplan and Earnest, P.C., Gerald A. Ca-
plan, Susan S. Schermerhorn, Boulder, and
Gerald D. Weaver, Montrose, for petition-
ers.

George C. Price, Denver, for respon-
dents.

Lauren B. Kingsbery, Denver, for ami-
cus curiae Colorado Ass'n of School
Boards.

Martha R. Houser, Gregory J. Lawler,
Sharyn E. Dreyer and Cathy L. Cooper,
Aurora, for amicus curiae Colorado Educ.
Ass'n.

Justice LOHR delivered the Opinion of
the Court.

This case arises out of a dispute between
Patricia Lambert and the Montrose County
School District (district) and more particu-
larly the Montrose County Board of Edu-
cation (board), of which Lambert is a mem-
ber. In a vote from which Lambert ab-
stained, the board declined to hire her for a
teaching position within the district based
on the board's policy concerning board
member conflicts of interest. Lambert
then brought the present action in the Dis-
trict Court for Montrose County, asserting
that the board's decision not to hire her as
a teacher on the basis of the conflict of
interest policy violated her federal and
state constitutional rights to equal protec-
tion of the laws.[1] *See* U.S. Const. amend.
XIV; Colo. Const. art. II, § 25. The dis-
trict court entered summary judgment in
favor of the board on Lambert's constitu-
tional claims, holding that the conflict of
interest policy was not arbitrary and was
reasonably related to a legitimate govern-
mental interest. On review, the Colorado
Court of Appeals reversed the district

---

**1.** Lambert also alleged various other claims
against the district, the board, and the school
superintendent that were dismissed by the dis-
trict court on motions and that are not before
us for review.

court's ruling granting the board's summary judgment motion. *Lambert v. Montrose County School Dist.*, No. 89CA0959 (Colo.App. Jan. 24, 1991) (not selected for publication). The court of appeals held that enforcement of the policy that precluded a board member from teaching within the district but permitted spouses of board members to teach within the district violated Lambert's constitutional rights to equal protection of the laws. *Id.*, slip op. at 6. The board sought review of the court of appeals' decision, and we granted certiorari solely to consider whether the court of appeals erred in determining that the board's refusal to employ Lambert as a teacher while she served as a school board member violated her constitutionally protected rights to equal protection.[2]

## I.

The record reveals the following factual basis for the conflict between the parties. No dispute exists as to any of the material facts. Lambert was elected to the Montrose County School District Board of Education in May of 1987. In August of that same year, she applied for a position as a teacher of educationally handicapped students at Olathe Elementary School, which is within the Montrose School District.

Lambert had a teacher's certificate that qualified her for the position. She was offered a half-time position by a school administration official and signed a contract of employment accepting the position on September 21, 1987. She understood that the contract was subject to approval by the board. The board held a meeting on September 23, 1987, at which it voted to deny the recommendation of the school administration that Lambert be authorized for employment as a teacher at Olathe Elementary School. Lambert was present at the meeting but abstained from voting. The minutes of the meeting reflect that the board's decision was based on its conclusion that as long as Lambert was a member of the board, her employment as a teacher within the district would constitute a conflict of interest.[3] The board also stated in its resolution that the action was not to be viewed as a reflection on Lambert's ability to perform the work.

On July 29, 1988, Lambert filed suit in district court against the board, the district, and the school superintendent. She alleged that the board's conflict of interest policy created an impermissible classification in violation of her right to equal protection of the laws pursuant to both article

---

**2.** The court of appeals also resolved issues relating to the propriety of the trial court's denial of Lambert's motion to amend her complaint and to the trial court's award of attorney fees. Those issues are not before us for review.

**3.** Pursuant to § 22–32–109(1)(y), 9 C.R.S. (1988), the board adopted a formal conflict of interest policy in 1984. The policy states:

> Public office is a trust created in the interest of the common good and for benefit of the people. A conflict of interest can arise when a public officer is unable to devote himself with complete loyalty and singleness of purpose to the general public interest.
>
> It is the intent of this policy to protect the public trust placed in directors of this school district. For purposes of this policy, the Board declares that conflicts of interest can arise when a Board member will personally derive a significant private benefit that is pecuniary in nature from Board action.
>
> In the event of any conflict of interest or potential conflict of interest, the Board member shall disclose the conflict of interest in writing to the Board prior to the vote. The

> written disclosure will be attached to the minutes of the meeting at which Board action occurred relating to the matter disclosed.
>
> The Board will not purchase supplies, equipment or personal services in excess of *$500.00* from any member of the Board or from a firm or corporation in which a Board member has a substantial interest unless such purchases are made on the basis of competitive bids or quotations requested through public advertising. Members may submit bids when formal bids are requested but should abstain from voting to award contracts under such bids.
>
> A Board member who discloses a potential conflict of interest on any matter may abstain from voting on the matter disclosed.

Although the policy does not expressly prohibit board members from being employed as teachers within the district, the board maintains, and the record does not indicate otherwise, that it has consistently interpreted the policy to preclude persons from holding such dual positions. Lambert does not challenge the policy on the basis that it failed to provide her with adequate notice of the types of activities that would constitute a conflict of interest.

II, section 25, of the Colorado Constitution and the Fourteenth Amendment to the United States Constitution. The board moved for summary judgment with regard to the equal protection claims. Lambert filed a cross-motion for summary judgment and a separate motion to deny the board's summary judgment motion. The district court, employing a rational basis standard of review, entered summary judgment in favor of the board. The court held that the board's conflict of interest policy, which prohibited board members from becoming teachers within the district, was reasonable and not arbitrary and was reasonably related to a legitimate government interest and thus did not create an impermissible classification.

The court of appeals reversed the trial court's determination. It reasoned that there is no principled distinction between the class of persons to which Lambert belonged—board members who apply for employment as teachers—and persons who are married to board members and are employed as teachers or apply for employment as teachers, because the two groups are similarly situated with respect to the board's goal of preventing a conflict of interest. *Lambert,* slip op. at 5–6. The court of appeals thus concluded that the classification established by the board's conflict of interest policy was underinclusive and held that enforcement of the policy violated Lambert's equal protection rights. *Id.* at 6.

## II.

The constitutional right to equal protection of the laws is guaranteed by the Fourteenth Amendment to the United States Constitution and the Due Process Clause of article II, section 25, of the Colorado Constitution.[4] This right ensures that similarly situated persons will receive like treatment under the law. *People v. Rickstrew,*

775 P.2d 570, 574 (Colo.1989); *People v. Mozee,* 723 P.2d 117, 126 (Colo.1986). If a classification does not adversely affect a suspect class or infringe a fundamental right, an equal protection challenge is analyzed under a rational basis standard of review. *Pennell v. City of San Jose,* 485 U.S. 1, 14, 108 S.Ct. 849, 858, 99 L.Ed.2d 1, 16 (1988); *Harris v. The Ark,* 810 P.2d 226, 229–30 (Colo.1991).[5] When a classification is challenged under a rational basis standard, a presumption of constitutionality attaches and the challenging party must prove the unconstitutionality of the classification beyond a reasonable doubt. *Harris,* 810 P.2d at 230.

The parties agree that rational basis is the proper standard of review in this case. Thus, the classification will be upheld if it has some rational basis in fact and is reasonably related to a legitimate governmental interest. *Reed v. Reed,* 404 U.S. 71, 76, 92 S.Ct. 251, 254, 30 L.Ed.2d 225, 229 (1971); *People v. Rosburg,* 805 P.2d 432, 438 (Colo.1991). The rational basis standard does not demand that legislatively created classifications be perfect, nor does it require that legislative action address the " ' "whole field of possible abuses." ' " *Ferguson v. People,* 824 P.2d 803, 810 (Colo.1992) (quoting *In re Interrogatories,* 97 Colo. 587, 596, 52 P.2d 663, 667 (1935) (in turn, quoting *Farmers & Merchants Bank v. Federal Reserve Bank,* 262 U.S. 649, 661, 43 S.Ct. 651, 656, 67 L.Ed. 1157, 1164 (1923))); *see also Dandridge v. Williams,* 397 U.S. 471, 486–87, 90 S.Ct. 1153, 1162–63, 25 L.Ed.2d 491, 502–03 (1970) ("[T]he Equal Protection Clause does not require that a State must choose between attacking every aspect of a problem or not attacking the problem at all."). In *Atkinson v. City & County of Denver,* 118 Colo. 322, 330, 195 P.2d 977, 981 (1948), we stated that

"[a] legislative enactment does not violate the equal protection clause merely

---

**4.** The Due Process Clause of the Colorado Constitution encompasses the right to equal protection of the laws. *Harris v. The Ark,* 810 P.2d 226, 229 n. 2 (Colo.1991).

**5.** We recognize as well that some classifications such as those based on illegitimacy or gender

trigger an intermediate standard of review. *San Antonio Indep. Sch. Dist. v. Rodriguez,* 411 U.S. 1, 40, 93 S.Ct. 1278, 1300, 36 L.Ed.2d 16, 47 (1973); *Harris,* 810 P.2d at 230. This case involves no such classifications.

because it is not all-embracing. The legislature is free to recognize degrees of harm and may confine its restrictions to those classes of cases where the need is deemed to be clearest."

(quoting *Independent Dairymen's Ass'n, Inc. v. City & County of Denver*, 142 F.2d 940, 942 (10th Cir.1944)); *accord Ferguson*, 824 P.2d at 810; *Parrish v. Lamm*, 758 P.2d 1356, 1371 (Colo.1988). We will employ these principles to analyze the validity of the board's conflict of interest policy, which does not permit board members to be employed as teachers within the school district but allows spouses of board members to teach.

Lambert concedes that the board has a legitimate interest in establishing and enforcing a conflict of interest policy for its members. She argues that the court of appeals was correct in holding that the board's policy is arbitrary and not reasonably related to that interest because it is underinclusive. Specifically, she contends that to allow the spouse of a board member to be a teacher presents the same conflict of interest as to allow a board member to teach. Lambert reasons that in each case the effects of board action concerning matters affecting teachers is felt by a member of the board. We do not agree that the effects are the same.

The board reasonably could have believed that the conflict of interest created when a board member is also a teacher is more direct and compelling than the conflict that may arise when the board member's spouse is a teacher. A teacher is often directly affected by the decisions of the board of education, whereas the impact on that teacher's spouse is indirect in nature. The connection between board action and the effect it has on a member whose spouse is a teacher becomes even more attenuated when the action involves a non-economic matter such as school curriculum.

The logic of the position taken by the board in this case is illustrated by two Wyoming cases that address the issue of whether school board members who are teachers may be disqualified from serving on the school board based on the doctrine of incompatibility of office. The Wyoming Supreme Court upheld the disqualification of a board member who was elected to the board of trustees of a school district while at the same time being employed as a teacher within the district. *Haskins v. State ex rel. Harrington*, 516 P.2d 1171 (Wyo.1973). The decision was based on the conclusion that the doctrine of incompatibility of office prevented the teacher from concurrently holding positions in which he acted as both the supervisor and the supervised and where his self-interest as a teacher in many instances would run counter to the board of trustees' obligation of loyalty to the public.

In 1979, the same court held that board members could not be disqualified from sitting on the board of trustees of a school district because their spouses were teachers employed by the district. *Coyne v. State ex rel. Thomas*, 595 P.2d 970 (Wyo. 1979). The court reasoned that a husband and wife could no longer be viewed in the law as a single entity, noting Wyoming's equal rights amendment, Wyo. Const. art. VI, § 1, and statutory provisions that treated spouses as independent actors with respect to income, contracts, and property, Wyo.Stat. §§ 20-1-201 and -202 (1977). Title 14, Article 2, Part 2, of the Colorado Revised Statutes also contains a variety of provisions designed to ensure independent treatment of spouses in economic and legal matters. §§ 14-2-201 to -210, 6B C.R.S. (1987); *see also Rains v. Rains*, 97 Colo. 19, 22, 46 P.2d 740, 742 (1935) (" 'the so-called unity of husband and wife is a mere figure of speech no longer having any practical significance' " (quoting *Hedlund v. Hedlund*, 87 Colo. 607, 609, 290 P. 285, 286 (1930))); *Commercial Union Ins. Co. v. State Farm Fire & Casualty Co.*, 546 F.Supp. 543, 546 (D.Colo.1982) (The separateness of spouses in Colorado is clearly established by Colorado's Equal Rights Amendment, Colo. Const. art. II, § 29, and by the Married Women Act, §§ 14-2-201 to -210.).

The Wyoming court also noted that in practical terms disqualification of board members based on personal relationships

creates line-drawing problems. It stated that

> [r]egardless of the criticism of nepotism and of tandem employment of relatives, a difficult decision is always presented as to where the line is to be drawn—at spouses, or parents and children, or brothers and sisters, etc. Some families are extremely close unto two or three degrees of kindred. Some are to the contrary.

*Coyne*, 595 P.2d at 974. The Montrose County School Board reasonably could have decided that its conflict of interest policy should encompass board members but not spouses of board members based on the reasons set forth in *Coyne* and *Haskins*.

Lambert also argues that the board's policy is arbitrary and not reasonably related to its legitimate interest in preventing conflicts of interest because under the policy, no conflict of interest is recognized when a person is first a teacher and then is later elected to the school board. Lambert maintains that she and such a person are identically situated and that therefore the board's policy is underinclusive. The evidence contained in the record, however, does not support the contention that this is the board's policy. Lambert bases her argument on a conversation she allegedly had with another member of the board and which she recounted in her deposition. At most, the conversation shows that in the opinion of one board member a distinction exists between Lambert's situation and the situation of a person who is already employed as a teacher when elected to the school board.[6] No evidence exists that the board's policy makes this sort of distinction, and therefore this issue is not properly before us.

### III.

In summary, we conclude that the board reasonably could limit its conflict of interest policy so as to prevent board members from becoming employed as teachers while not preventing spouses of board members from teaching. Therefore, we reverse that portion of the court of appeals' judgment holding that the conflict of interest policy promulgated by the Montrose County School Board violated Lambert's equal protection rights, and remand the case to that court for reinstatement of the district court's summary judgment for the defendants on Lambert's equal protection claims.

---

**6.** Lambert also referred in her deposition to a later telephone conversation with another member of the board who said he could not support her employment as a teacher. It is unclear from the record whether this conversation also included a discussion of whether a person employed as a teacher could continue in that employment after later being elected to the board.