MOLLIE E. BABCOCK, APPELLANT, v. ELMER W. MERRITT ET AL., APPELLEES.

REAL-ESTATE AGENTS—COMMISSIONS.—A real-estate agent who is authorized to sell a piece of property for $7,500, or for $7,000 net, clear of all commissions, cannot recover commissions from the owner, who herself sells the property for $7,000 to a purchaser who was introduced to her by the agent, but to whom the agent was unable to make a sale, and who made the agent no offer whatever.

*Appeal from Superior Court of Denver.*

Messrs. PATTERSON & THOMAS, for appellants.

Messrs. DOUD & FOWLER, for appellees.

REED, J. This was an action brought by appellees Merritt and Grommon against Mollie E. Babcock, to recover commissions as real estate brokers upon an alleged sale of property of appellant in the city of Denver. Trial to a jury, verdict and judgment for plaintiffs, (appellees,) for $237.50. There is no important conflict in the testimony. At the close of plaintiffs' evidence motion for a nonsuit was made on behalf of the defendant, which was disallowed by the

court. The right to recover was based upon the testimony of plaintiffs, which was not seriously controverted by the defense.

The first important question to be determined is one of law. Whether upon the testimony of the plaintiffs, uncontradicted, they were shown to have earned and to have been entitled to a commission.

The following facts were established by the evidence : In the fall of 1885 Mr. Merritt met appellant, who said she was quite anxious to sell the property; that the price was $7,500, but if an offer of less was made it might be submitted to her through her agent. He says, "I told her that I had a party at that time who had been figuring on the property, that I had already shown the property to, and that I hoped to complete a sale," etc. Another interview was had two or three weeks later. "Mrs. Babcock asked me if I had yet completed the sale to this party I had been figuring with before. I told her that I had not yet succeeded in completing the sale, but that I still had the party in tow, and was trying to sell to them."

. On the first of January, 1886, witness formed a partnership with Mr. Grommon, and at some subsequent time again saw appellant and informed her of the partnership,—told her "that we were endeavoring to sell her property; had been advertising it and were trying to complete a purchase or sale, and that we should use every means in our power; that he personally never had any further conversation with her." The party referred to by the witness, as being the one to whom he supposed he could sell the property, was a Mr. J. M. Tompkins, a resident of Cheyenne.

The last interview between Merritt and appellant seems to have been in the latter part of February, 1886. On the 29th day of April following, by an arrangement and trade made between Mr. Tompkins and appellant, Mr. Tompkins became the owner of the property. Mr. Merritt had shown the property to Mr. and Mrs. Tompkins with a view of renting it to him. This was in the latter part of February, or early part

of March.  It appears that while looking through the house, for the purpose of renting, there was some talk of the possibility of his purchasing it at some subsequent time.  He wanted to know if plaintiff thought the owners would take in exchange some property which he owned in Cheyenne.  He was told that he thought not, that the owner wanted the money, etc.; that he tried to get an offer or proposition from Tompkins to trade for or purchase the property, but none was made; that Tompkins said that he would rent it for a month, and perhaps he would make a proposition to purchase.  That was the last and only conversation he had regarding the sale.  On cross examination plaintiff said that he tried to get an offer but did not succeed.

There is no evidence to show either that the appellees were ever authorized to trade the property, or sell for anything but cash.  It is established by the evidence and uncontradicted that the price of the property was $7,500, and that the lowest offer that would be entertained was $7,000 net or clear of all commissions of agents.  It is also shown that no talk or conversation had between appellees and Tompkins in regard to the probability of a trade of property was communicated by plaintiffs to the defendant.  It is also shown that the offer of $7,000 cash, net for the property, would not be entertained unless the sale was made and the transaction closed before appellant left Denver for Omaha, which was to occur, and did, a day or two after the last interview.

It appears that some time during the month of March or early part of April the agent of appellant applied to Mr. Grommon to learn the name of the party who had talked of trading for the property, and was informed that it was Mr. Tompkins, who was renting the property, and who had an office in Cheyenne.  This appears to have been the only participation of appellees in the transaction subsequent to the facts stated above.

It is shown by the testimony of Mr. Merritt that neither he nor his partner further participated, nor had any knowl-

edge of the dealings between appellant and Mr. Tompkins, until some time subsequent to the transfer of the property, when he learned the fact of the sale from the county records. After learning the fact he addressed the following letter to appellant:

"DENVER, Colo., May 19, 1886.

Mrs. M. E. BABCOCK, OMAHA, Neb.

Dear Madam:—We are pleased to see by the records of Arapahoe county that you have sold your property at 277 Broadway to Mr. J. M. Tompkins, whom we had the pleasure of interesting in the purchase, first through his wife, in November of last year, soon after you were pleased to place it in my hands for rent and sale, and afterward Mr. Tompkins himself. We see by the records that the price which you received for the place was $7,000, and we are glad we succeeded in securing a good customer. Our commission is regular Board rates, viz.: 5 per cent on first $2,500, and 2½ per cent on excess, making amount due us of $237.50, which please remit us at once and oblige,

Yours truly,

MERRITT & GROMMON,

By MERRITT."

In the purchase made by Mr. Tompkins he assumed encumbrance on the property of $4,000 ; gave his note for $1,000, put in one house and lot in Cheyenne at an estimated value of $2,000, making, as supposed, the consideration $7,000.

There are a great many reported cases of suits by real estate brokers to recover commissions. The decisions of the different courts are not all in harmony, but there are some well settled rules and legal principles that seem to be well founded in reason that are almost universally conceded as controlling. Two of them only need be invoked in the determination of this case. First, before the broker can be said to have earned his commission he must produce a purchaser who is ready, willing and able to purchase the property upon the terms, and at a price designated by the principal. *Hungerford v.*

*Hicks*, 39 Conn. 259; *Tombs v. Alexander*, 101 Mass. 255; *Bernard v. Marmat*, 3 Keyes (N. Y.) 203; *Saterthwaite v. Vreeland*, 3 Hun (N. Y.) 152; *Reese et al. v. Spruance*, 45 Ill. 308; *McArthur v. Slauson*, 43 Wis. 41; *Wylie v. Marine Bank*, 61 N. Y. 415.

Second, the broker must be the efficient agent or procuring cause of the sale. The means employed by him and his efforts must result in the sale. He must find the purchaser and the sale must proceed from his efforts acting as broker. *McClure v. Paine*, 41 N. Y. 561; *Lloyd v. Matthews*, 51 N. Y. 124; *Lyon v. Mitchell*, 36 N. Y. 235; *Briggs v. Rowe*, 4 Keyes (N. Y.) 424; *Murray v. Currie*, 7 Carr. & Pay. 584; *Wilkinson v. Martin*, 8 Carr. & Pay. 5.

Tested by these general principles it at once becomes apparent that no commission was earned. The employment was to make a cash sale for $7,500, or within a short, definite and limited time, at $7,000 net. These were the terms. No purchaser was found by the brokers who made any proposition to purchase for cash, or any definite proposition to trade property that was or could be communicated by the brokers to their principal. With the renting of the property to the subsequent purchaser all efforts to sell seemed to have been discontinued, and no knowledge of the transaction between him and the principal was obtained by the brokers until the fact of the transfer of the property was learned from the county records. In the contemplated sale for cash commissions were contingent upon selling for $7,500, or a sum above $7,000 sufficient to cover them. That having been the contract proved and the only one made, it is hard to find a legal basis on which to rest the claim for commission. Had the purchaser made, through the broker, a definite proposition to exchange property, which he did not, and the offer had been accepted, commission under the contract proved could not be recovered unless the price obtained exceeded the last net limit given; and when it is shown that no proposition to exchange was made, communicated to and acted upon by the owner, it is at once obvious that the means employed by the

brokers and their efforts did not result in a sale. They found no purchaser and the sale was not made through their efforts as brokers.

The owner herself subsequently sold the property to the tenant. It is true that the brokers gave to the owner the name of the tenant who had previously made an indefinite statement of his possible willingness to exchange properties. But this of itself creates no legal liability to pay commissions. It at most would only create a moral obligation to pay for the information received, if the same was beneficial. They had failed to find and produce a purchaser under the terms of their employment, and the owner was under no obligation to wait longer or indefinitely, and they having failed to negotiate a sale or exchange with Mr. Tompkins, or even get an offer from him, the fact that the owner subsequently sold to the same party to whom they had ineffectually attempted to sell, has no legal significance.

The law allowing compensations to this class of agents for supposed intervention in real estate transactions has, by many courts, been strained to its utmost tension. But I can find no well-considered case sufficiently broad to allow the appellees to recover under the facts in this case. I certainly do not feel like extending it. The law should be so defined and construed as to afford the owner of property some protection against the persistent claims of brokers, who seek a recovery on purely technical grounds, and at the same time assure to the broker compensation for services honestly and actually rendered.

I cannot indorse the proposition that the placing by the owner in the hands of brokers, perhaps two or three different firms, property for sale for an indefinite time, creates a lien on the property in favor of the broker for commissions in case the owner sells himself at some subsequent time.

In the case of *Chandler v. Sutton*, 5 Daly (N. Y.) 117, a case very similar and almost parallel with the one under consideration, I find the conclusion of the opinion by the eminent judge so pertinent, and my own ideas so much bet-

ter expressed than I can express them myself, that I may be pardoned for quoting it:

"The preposterous proposition of Burnett is, that because he was employed to sell the defendant's house, and undertook to sell it to a particular person and could not, that no sale of it could be made to that person thereafter, no matter how changed the facts may have been, without paying him a commission. That he has only to lodge his *caveat* to prevent the owner from selling thereafter to any one to whom he, as broker, tried in vain to sell, unless at the peril of paying to him his full commission."

There are several other errors assigned, notably, the instructions to the jury. I may be permitted to say that the instructions are in some parts particularly faulty in submitting to the jury questions of fact not warranted by the evidence. If I did not find the judgment of the court erroneous in refusing a nonsuit, I should be compelled to reverse the case upon the instructions, but having found that no commission was earned, a review of the instructions is unnecessary. The judgment should be reversed and cause remanded.

*Reversed.*