[No. 7431.]

PULLEN ET AL. v. HEADBERG.

1. CORPORATE STOCK—*How Taken in Execution*—Corporate stock is the right of the stockholder to share in the corporate assets. A levy thereon is effected by delivering a copy of the writ and a notice of the levy to an officer of the corporation designated by law.

2. ——*Stock Held in Trust for Execution Defendant*, may be sold on execution for the liabilities of the beneficiary; but a certificate by the treasurer of the corporation that stock standing upon the books in the name of another is in fact held in trust for the execution de- fendant, does not establish the trust, nor in any way aid in the col- lection of the creditor's demand.

Such trust can only be established by the judgment of a court of competent jurisdiction, in an action to which the record holder of the stock is a party.

3. ——*Levy—Refusal by Corporate Officer to Certify Members' Holdings*—The refusal of an officer of a corporation to certify to the shares held by the execution defendant in no way affects the lien ac- quired by a valid levy thereon.

4. ——*Conspiracy of Offfficers of Corporation to Defeat Levy on Shareholder's Stock*—A combination among the officers of a corpora- tion to conceal the holdings of a member, by causing the same to be registered in the name of another, occasions no injury to a creditor of such stockholder who has no lien on the stock, and affords him no action against the officers so combining.

5. CONSPIRACY—*Civil Action For*—The gist of a civil action for a conspiracy is not the unlawful combination, but the damages occa- sioned thereby. There can be no actionable conspiracy not resulting in damage to the complaining party. Nor can there be a conspiracy to do what is in law impossible, e. g., to prevent an officer from taking into his possession corporate stock of the defendant in the process.

*Error to Denver County Court.*—Hon. H. S. CLASS, Judge.

Messrs. GARWOOD & GARWOOD, for plaintiffs in error.

Messrs. STARK & MARTIN, for defendant in error.

Mr. JUSTICE GARRIGUES delivered the opinion of the court:

1. This action grows out of an attempt to collect upon execution a judgment in favor of Mrs. Headberg, against O. C. Wilson. September 23, 1910, a constable levied an ex- ecution upon the rights or shares owned or held by Wilson in The Interstate Business Exchange Corporation, in the manner provided by section 3619, R. S. The secretary was out of town; Pullen, a mere employe, was in charge of the office,

acting as secretary, and Clarkson was treasurer. The officer requested Pullen to give him a certificate showing the number of rights or shares Wilson owned, or which were held in trust for him, or for his use in the corporation, as provided by section 3618, R. S. Pullen declined, giving as his reason, that he was unable to make such a certificate in the absence of the secretary. September 30, 1910, Clarkson as treasurer, furnished a certificate, in which he stated that Wilson had no rights or shares in the corporation. This action was brought the next day in a justice court against Pullen and Clarkson. Judgment was obtained against them, and they appealed to the county court, where, upon the verdict of a jury, judgment was again entered against them, and they bring the case here on error.

The action having originated in a justice court, there are no written pleadings; but the issues are outlined by the statements of counsel. Plaintiff below, says her first cause of action is brought under section 3618, R. S., against Pullen as acting secretary and chief clerk of the corporation, and Clarkson as treasurer, for their failure and refusal to certify to the constable the number of shares owned by Wilson, or held in trust for him or to his use, upon the books of the company. That the second cause of action is based upon a conspiracy, wherein Clarkson and Pullen conspired to defeat the levy upon the shares owned by Wilson, and held in the fictitious name of Harry Holmes; that they conspired to keep Wilson's shares from the possession of the officer after a lien had been acquired thereon. Counsel say in argument: "We contend that plaintiffs in error have conspired to block our collection of this judgment; that although we made an attachment on the stock, had a lien upon it at that time, that their denial of O. C. Wilson's ownership of the same made it impossible for us to sell the stock, at any sum, and thus permitted Mr. Wilson to escape payment of the same, or have his stock sold, which is held to his use by the alleged Harry Holmes."

2. A stockholder's interest in a corporation, is said to be his right to share in its assets. This interest is subject to sale upon execution, the shares, of which the stock certificate is evidence, are held by the corporation for the shareholder, and constitute a property right. The books of the company contain the record of the shares, and their legal title passes by a transfer on the books. In levying upon the right, it is treated as property incapable of manual delivery, and a copy of the writ, accompanied with notice of the levy, is left with a designated officer of the corporation.—*People ex rel. v. Mfg. Co.,* 99 Ill. 355; *Spreckles v. Nevada Bank,* 113 Cal. 272; *West Coast Co. v. Wulff,* 133 Cal. 315.

3. The purpose of the certificate mentioned in section 3618, R. S., is to obtain information, and no doubt the giving of false information would make one liable for any damages occasioned thereby. The certificate of the treasurer in this case was not false. It was a true statement of the condition of the stock record, as shown by the books of the company. At one time 6,665 shares stood on the books in the name of Wilson's wife, for which she held a certificate. This stock was transferred by her to Holmes, a new certificate was issued to him, the old one was surrendered, and the stock was transferred to Holmes on the books of the company. Holmes lived at Aspen, and there is no evidence that he was a fictitious person. But it is claimed that the 6,665 shares were held by Holmes in trust for Wilson. If Wilson owned the stock standing on the books in the name of Holmes, there was a way to reach and sell it upon execution, as any property held in like manner; but it could not be done upon the certificate of the treasurer.

The title to these shares was involved. The charge is, that a false certificate was given which defeated the collection of plaintiff's judgment. If the treasurer had given a certificate different from the record on the books, that Holmes held the stock in trust for the use of Wilson, we do not see how it could have aided the constable in the collection of the judg-

ment. Upon execution sale against Wilson, the title to stock standing on the books of the company in the name of Holmes could not be determined by a certificate furnished the officer by the treasurer. It was for the court, and not the treasurer, to decide who was the owner of this stock. The process by which it was proposed to sell upon this execution against Wilson, stock standing on the books of the company in the name of Holmes, is not explained. Holmes could not be deprived of the title to this stock without his day in court. Any attempt to adjudicate in this suit, that stock standing on the books of the company in the name of Holmes, for which he held a certificate, was held by him in trust for the use of Wilson, and to sell the same upon execution for the payment of Wilson's debts, would be void, unless Holmes was made a party and given an opportunity to defend the title.—*Archuleta v. Archuleta,* 52 Colo. 601, 123 Pac. 821. •

3. At common law a conspiracy is defined as a combination between two or more persons to do a criminal or unlawful act or a lawful act by criminal or unlawful means. In criminal prosecutions, the gist of the action is the conspiracy. But in civil cases, the gist of the action is not the conspiracy, but the damages resulting from it, and unless a civil action in damages would lie against one of the conspirators, if the act was done by him alone, it will not lie against many acting in concert. The object of the criminal action is punishment against the wrong-doers. The object of the civil action is to recover any damages resulting from carrying out the conspiracy.—*Martens v. Reilly,* 109 Wis. 464; *Wellington v. Small,* 50 Am. Dec. 719; *Bitzer v. Washburn,* 121 Ia. 462; *Field v. Siegel,* 99 Wis. 605.

Where the creditor has acquired a lien on his debtor's property, then a conspiracy which defeats the lien, is actionable, and the damages are capable of being estimated. If the creditor has no lien, then a conspiracy to dispose of the property, is not actionable.—*Wellington v. Small,* 50 Am. Dec. 722.

Keeping these principles in mind, and conceding, but not holding that the evidence showed there was a conspiracy, let us see what damages, if any, it caused plaintiff. Counsel say defendants conspired to keep the shares of Wilson away from the possession of the constable so they could not be sold upon execution. An officer in levying upon corporate stock, does not take it into his possession; therefore defendants could not have entered into actionable conspiracy to keep it out of the officer's possession. The gravamen of the conspiracy charged, is that defendants obstructed and prevented the collection of her judgment, which she says their unlawful and malicious conduct rendered worthless. If Wilson was the controlling factor in the corporation, and if the stock standing in the name of Holmes on the books of the company was his, and if defendants assisted in bringing it about, such a condition under the authorities, would not constitute actionable conspiracy.

The officer levied the execution upon Wilson's interest in the corporation, and there is no proof that defendants intermeddled in any way to defeat this lien or to prevent the collection of the judgment. If plaintiff obtained a lien on the stock, she still has it, and any remedy she ever possessed to reach stock held by Holmes for the use of Wilson, has been in no way affected or defeated by any acts of the defendants.

*Reversed.*

CHIEF JUSTICE CAMPBELL and Mr. JUSTICE MUSSER concur.