## No. 11,309.

### Schreiber *v.* Burton, Trustee.

Decided April 25, 1927. Rehearing denied May 23, 1927.

Action for damages for conspiracy. Judgment for plaintiff.

### *Affirmed.*

1. Pleading—*Conspiracy*—*Complaint.* Allegations of a complaint in an action for damages in conspiracy reviewed and held to state a cause of action.

2.  DAMAGES—*Conspiracy.*  Vice-president and attorney of a corporation who conspired together to discourage the sale of assets of the company and procure a cancellation of insurance agency contracts for their own benefit, held liable to the corporation's trustee in bankruptcy for resulting damages.

3.  APPEAL AND ERROR—*Conspiracy—Sufficiency of Evidence.*  In an action against the vice president and attorney of a corporation for damages for conspiring against the company, record reviewed and evidence held to support a general verdict and special findings for plaintiff.

4.  *Fact Findings.*  Fact findings of a jury based on conflicting evidence will not be disturbed on review.

5.  INSTRUCTIONS—*Requests.*  Requested instructions, which do not state the law correctly or which are covered by instructions given by the court, are properly refused.

6.  *Considered Together.*  No error may be predicated on the giving of a single instruction which although erroneous if taken alone, is not objectionable when considered with the other given instructions, the jury being told that they must consider all of the instructions together as a whole.

7.  APPEAL AND ERROR—*Instructions.*  Error predicated on the giving of instructions will not be considered on review where no objections were made nor exceptions saved in the trial court to the giving of the instructions.

*Error to the District Court of El Paso County, Hon. Wilbur M. Alter, Judge.*

Mr. JAMES A. ORR, Mr. H. T. McGARRY, for plaintiff in error.

Mr. WILLIS L. STRACHAN, Mr. CHESTER B. HORN, Mr. EUGENE D. PRESTON, for defendant in error.

*En Banc.*

MR. JUSTICE WHITFORD delivered the opinion of the court.

THE defendant in error, plaintiff below, as trustee in bankruptcy of The Kent Realty Company, brought this

action against plaintiff in error Schreiber and his code-fendants, Stafford and Wynne, to recover damages resulting from a conspiracy formed by them to defraud The Kent Realty Company of its assets. Plaintiff had a verdict and judgment, and defendant Schreiber is here on error to review that judgment. Stafford was not served with process and the court dismissed as to Wynne.

Plaintiff in error Schreiber challenges the sufficiency of the complaint. The complaint, after alleging the corporate character of The Kent Realty Company and the appointment of the plaintiff as trustee in bankruptcy, charges, in substance, that The Kent Realty Company for many years prior to August 10, 1923, was engaged in the real estate, loan and insurance business and had a large and profitable business and acted as local agent for a large number of insurance companies, and also represented a large number of property owners in the renting of property; that on August 10, 1923, Miller, the president of The Kent Realty Company, died, whereupon the defendant Stafford, as vice president, assumed the active control and management of all the business affairs of the company, and on that day employed defendant Schreiber as attorney for the company, who thereafter, until the bankruptcy proceeding, represented the company as its attorney in all of its transactions; that between the 10th and the 21st of August, 1923, the defendants conspired together for the purpose of securing for themselves the business theretofore enjoyed by The Kent Realty Company, and in furtherance thereof, on the 21st day of August, 1923, entered into an agreement with all of the insurance companies to cancel the agency contracts then existing and theretofore enjoyed by The Kent Realty Company, and to appoint defendant Stafford as their local agent in lieu of The Kent Realty Company; that in order to obtain the agencies for Stafford, defendant Schreiber personally guaranteed payment of the balances due from The Kent Realty Company to the insurance companies; that as a result of the agreement all

of the insurance companies cancelled their agency contracts with The Kent Realty Company and appointed Stafford as local agent for each of the insurance companies; that after securing the agency contracts on August 21st, the defendants conducted their insurance business in the offices of The Kent Realty Company and used its records and equipment, as well as its employees, in the conduct of the insurance business, at the expense of The Kent Realty Company and for the benefit and profit of the defendants; that at all times after August 10th the defendants, fraudulently and with intent to prevent a sale of the assets of the company for a reasonable value, discouraged prospective purchasers of said business and its good will, and advised buyers and prospective purchasers that there were hidden liabilities of said Kent Realty Company, by reason of which it was unsafe for a purchaser to assume the liabilities of the company, or to purchase the business, which acts were committed by the defendants for the purpose of preventing a sale to others, and to secure the business of The Kent Realty Company for themselves; that on August 10th the insurance and realty business, records of insurance expirations, good will and other intangible assets, together with the furniture and fixtures of The Kent Realty Company, was of the reasonable value of $25,000; that on October 3, 1923, a suit was commenced by a creditor of The Kent Realty Company for the appointment of a receiver; that the defendants caused Schreiber to appear in said case, as attorney for The Kent Realty Company, and confess the insolvency of the company and urge the appointment of defendant Wynne as receiver, who, under his appointment, permitted the defendants Stafford and Schreiber to continue the insurance business in the office of The Kent Realty Company, and to use its stationery, equipment and records without remuneration to the company; that by reason of the acts of the defendants, while acting as manager and vice president, attorney and employee of The Kent Realty Company, the assets of the company

were so depleted at the date of the adjudication in bankruptcy, on October 10, 1923, that the assets of the company were of the value of only $3,400; that by reason of the unlawful and fraudulent acts of the defendants, The Kent Realty Company was damaged, in having its assets depleted, to the extent of $21,000, and charges that by the commission of the tort the defendants were guilty of malice, fraud and wilful deceit, and prayed, in addition to damages, for a body judgment.

This lengthy statement of the substantial averments of the complaint seemed advisable, as the best means of intelligently presenting the issues raised by the general demurrer.

We think the complaint states a good cause of action for damages in conspiracy. The vice in the argument of counsel for defendant is the assumption that Schreiber and Stafford owed no duty to The Kent Realty Company. Counsel's argument ignores the relationship of Stafford as an official of the corporation, and defendant Schreiber as its retained, acting attorney, while they were planning and scheming to prevent a sale of the company's assets and to procure the cancellation of valuable agency contracts held by The Kent Realty Company, with the design of taking over all of the agency contracts and the company's good will to themselves individually for their profit and benefit, to the loss and injury of the corporation. Clearly such conduct of a director and managing vice president of a corporation, and its retained attorney, constitutes an actionable wrong. *Ward v. Motor Co.,* 74 Colo. 145, 219 Pac. 776. The conspiracy was well pleaded, and the plaintiff is, by the decisions of this court, entitled to damages caused by the acts done in furtherance of the conspiracy. *Coulter v. Coulter,* 73 Colo. 144, 214 Pac. 400; *Pullen v. Headberg,* 53 Colo. 502, 127 Pac. 954.

Besides a general verdict of $11,600 for the plaintiff, the jury found specially: (1) That the defendant Schreiber was the retained attorney of The Kent Realty Com-

pany from August 10, 1923, to October 3, 1923; (2) that during the same period Schreiber and Stafford conspired to depreciate the value of the business and assets of the company; and (3) that Schreiber, in committing the wrong, was actuated by fraud.

The second contention urged by counsel is that the evidence is insufficient to support the verdict. We think the evidence was amply sufficient to support the general verdict, as well as the special findings.

It is admitted that Stafford was a director and vice president of The Kent Realty Company on August 10, 1923, the date of the death of Miller, its president, and upon Miller's death Stafford took active charge and control of the business of the company. There is evidence that Stafford on that date was the owner of but one share of the stock of The Kent Realty Company. On the day following the death of Miller, he made an ineffectual effort to displace the three members of the Miller family on the board of directors and to name Schreiber as one of the directors, who was not then and never had been a stockholder of the company. On the day Miller died Stafford retained Schreiber for the company, and on that day gave Schreiber the company's check, the stub of which was marked "Retainer fee for the company," and later gave him another company check marked "retainer fee." On August 20th Stafford arranged by telephone with an insurance agent to have a meeting in Denver with the general agents of the eighteen insurance companies represented by The Kent Realty Company, and without disclosing his or Schreiber's movements or their purposes to any of the directors or stockholders of The Kent Realty Company, Schreiber went to Denver, as the local representative of the company, at the instance of Stafford, and there effected the cancellation of the agency contracts with The Kent Realty Company, and before the conference of insurance agents at Denver, exhibited evidence to convince them of the insolvency of the company, and for the purpose of securing the in-

surance agencies for Stafford as local agent, in lieu of The Kent Realty Company, he personally guaranteed the payment of an indebtedness of about $4,000 of The Kent Realty Company for premiums then due to the insurance companies. After securing the agency contract for Stafford, Schreiber took possession of the records of expirations of the insurance policies, admitted by him to be valuable, and which insurance men testified were of great value in the insurance business, and carried them from the Kent Realty Company's offices to *his* private office and locked them up and retained them for himself and Stafford. Thereafter Schreiber appeared in court, as attorney for the company, without any previous action by the board of directors or the knowledge of any of its members other than Stafford, and confessed the insolvency of the company and consented to the appointment of a receiver.

It appears from the report of the public accountant Hilton, filed in the Estate of Miller, the deceased president, that at the time of Miller's death the assets of the company exceeded its liabilities. The testimony of Edward W. Kent, who organized the company, was to the same effect. The evidence shows that for the twelve months immediately preceding the 10th day of August, 1923, the gross profits of the company were over $32,000, and that the reasonable net value of the business was $20,000.

It appears from the evidence that the firm of Price and McDonald, engaged in the insurance and real estate business in Colorado Springs, were willing to pay $15,000 for the business and assets of The Kent Realty Company, but that Schreiber and Stafford disconcerted the negotiations to that end, and frustrated the consummation of the sale. Schreiber asserted from the beginning that The Kent Realty Company was hopelessly insolvent, and that there were hidden liabilities of the company not disclosed by the books or the report of the accountant Hilton, unknown to any one but Stafford and himself, and

that The Kent Realty Company was hopelessly insolvent, and that McDonald did not understand what his firm were getting into or they would not want to buy the assets of the company, and Stafford met the offer of McDonald to buy the company's business and assets for $15,000 by a counter proposal that if he, Stafford, consented to the sale, it must be upon the condition that McDonald assume the payment of Stafford's note at the Exchange National Bank, of $3,750, and guarantee him future employment.

There is evidence that after Stafford secured the transfer of the agency contracts from The Kent Realty Company to himself, he continued to occupy the offices of the company for the insurance business, until the bankruptcy proceedings, when he moved the insurance business into other offices and advertised in the newspapers that he was the agent of the insurance companies formerly represented by The Kent Realty Company. At the sale by the trustees in bankruptcy of the furniture, fixtures and assets of The Kent Realty Company, Schreiber became the purchaser for the sum of $3,400, following which he and Stafford organized The Star Realty Company and divided the stock thereof, two-thirds to Schreiber and one-third to Stafford, and caused the insurance agencies formerly represented by The Kent Realty Company to be transferred to The Star Realty Company, which transfer constituted the sole consideration for the stock of The Star Realty Company issued to Stafford.

The testimony in the case was quite voluminous and much of the evidence was in sharp conflict, and in that state of the record we cannot disturb the findings of the jury.

The objections to the instructions are not well founded. The instructions given by the court covered the whole case and advised the jury fully on the questions submitted to them for their determination. Some of the requests refused did not state the law correctly, and others were properly covered by the instructions given.

Counsel lay great stress upon their assignment of error as to instruction No. 12. By that instruction the court charged the jury "that the burden of proof is upon the plaintiff to prove the material allegations of his complaint by a preponderance or greater weight of the evidence, and unless he has done so, the verdict should be for the defendant." The objection to the instruction is that it does not point out what are the material allegations of the complaint, but leaves it to the jury to determine what are the material averments. If the instruction stood alone, the objection might have great force, but the court told the jury that no one of the instructions contained all the law applicable to the case, but that all of the instructions must be taken and read together, as they were connected and related to each other as a whole. When instruction No. 12 is read in connection with instruction No. 1, to which counsel made no objection below, we are of the opinion that the jury were fully informed as to the issues and what facts had to be proven in order to entitle the plaintiff to recover.

Counsel argue strenuously and at length against instruction No. 10, but counsels' extended argument can avail them nothing, for the reason that no objections were made nor exceptions saved in the court below to the giving of the instruction.

We find no prejudicial error in the court's rulings on the admission or the exclusion of evidence.

We have read all of the testimony in the transcript and have carefully considered the entire record and each of the assignments of error and have reread the extended briefs of counsel, and after doing so, are fully persuaded that the facts and circumstances disclosed by the record are amply sufficient to sustain the verdict and the special findings of the jury, and that the record before us is free from any substantial error.

Judgment affirmed.

Mr. Justice Butler and Mr. Justice Campbell not participating.