A. I. Fɪꜱᴛᴇʟʟ *v.* A. R. Tʜᴏᴍᴀꜱ, *et al.*
(355 P. [2d] 105)

Decided September 12, 1960.

Mr. Sidney Tellis, Mr. Rollie R. Rogers, for plaintiff in error.

Mr. Clifford H. Heald, for defendants in error Victor and Leon Ginsberg.

Mr. Cecil Zeitlin, pro se.

*In Department.*

Opinion by Mr. Justice Knauss.

The parties to this writ of error appear here in the same order in which they appeared in the trial court. We shall refer to defendant Thomas (who has not appeared in this court) as Thomas, or the Seller, and to the other defendants as Zeitlin, Victor B. Ginsberg as Victor, and Leon Ginsberg as Leon.

This action was originally commenced in 1949 and finally came to trial in September 1956. The reason for this long delay in bringing the matter to trial does not appear. The trial court, at the conclusion of plaintiff's case, dismissed the complaint and entered judgment in favor of all defendants. Plaintiff is here seeking reversal.

The amended complaint stated two claims for relief. In the first plaintiff sought recovery against defendant Thomas in the sum of $3,800 as a broker's commission claimed to be due him for producing purchasers for the Elgin Hotel in Denver, who were ready, willing and able to purchase the property upon terms and conditions agreeable to Thomas, and who, it is alleged, did in fact purchase the property from Thomas.

The second claim alleged that plaintiff was a real estate broker; had been employed by Thomas to find a

purchaser for the Elgin Hotel, and that plaintiff was successful in locating purchasers ready, willing and able to buy the same upon the terms and conditions agreeable to Thomas and that after plaintiff had been successful in bringing Thomas and the purchasers together, the latter persuaded and induced Thomas to breach his contract to pay plaintiff a commission on the same, and that all four defendants conspired and agreed to consummate the sale of the property in secret from plaintiff, and also agreed upon a lesser price in furtherance of their purpose to deprive plaintiff of a commission. It was alleged that Thomas did in fact sell the property at a substantially less price than that at which it was listed with plaintiff, and that as a result of the conspiracy plaintiff had been unlawfully deprived of his commission. Judgment was prayed against each defendant in the sum of $3,800, and for exemplary damages and a body judgment against each of them.

Defendant Thomas by answer denied the listing of the property with plaintiff, and denied each of the allegations of the second claim.

Zeitlin by answer admitted that Thomas had been the owner of the Elgin Hotel and denied all other allegations of the second claim.

Leon by his answer denied generally the allegations of the second claim, but admitted that he had held some conferences with Victor concerning the purchase of an undivided one-fourth interest in the Elgin Hotel property.

Victor admitted that he purchased the Elgin Hotel property; that he conveyed an undivided one-fourth interest therein to Leon and an undivided one-half interest to Zeitlin.

As above noted, when plaintiff rested his case each of the four defendants moved for a dismissal of the second claim and defendant Thomas moved for a dismissal of the first claim. These motions were granted, the action

dismissed, and judgment entered in favor of all defendants.

Two questions are presented: (1) Did the trial court err in dismissing the first claim? (2) Did the trial court err in dismissing the second claim? Both of these questions are answered in the negative.

The evidence on behalf of plaintiff in support of the first claim was wholly insufficient to warrant a judgment in his favor. It is admitted that plaintiff was a real estate broker and that Thomas owned the Elgin Hotel. Plaintiff testified that the conversation at the time of the alleged listing of the property was as follows: "A. Well, I asked him, [Thomas] 'If I get you a buyer, would you pay the customary brokerage?' I says now, 'Five per cent on the first 50,000 and two and a half per cent over that.' And he says, 'You get me a buyer. There will be no trouble.' He says, 'You're a pretty good hustler.'" He further testified that Thomas said: "The man that brings me the buyer, that's the man that's going to get his commission."

This listing allegedly occurred shortly before August 4, 1947. Plaintiff received no inquiries concerning the Elgin Hotel property and in January 1948, according to his testimony, he talked to a Mr. Ginsberg who "wanted to know if I had some property in the downtown section." Plaintiff testified he told Mr. Ginsberg "about the Elgin Hotel." No further contact was had with Mr. Ginsberg. In June 1948 Zeitlin came to plaintiff's office and, according to plaintiff's testimony, he gave Zeitlin certain figures on the Hotel property, including taxes, and made the statement: "The property nets $7,500 a year." Meanwhile Thomas was advertising the property for sale, which fact was known to all parties. The sale price of the hotel property quoted by plaintiff was $125,000, the property being listed with him at $115,000. He admitted that he had never produced a purchaser for the property at either figure. The property was sold to Victor for $102,000, $84,000 of which was represented by two exist-

ing mortgages. Plaintiff's contribution to a sale of the property amounted to nothing more than to mention to *a* Mr. Ginsberg in January of 1948 and to Zeitlin in June of the same year that the property was for sale. On June 28, 1948, plaintiff wrote a letter to Thomas advising him that he had mentioned the property to Zeitlin, concluding with the statement: "Now it may be that he may call you direct, and I am taking this means of telling you who our prospect is and with whom we are working so that you know he is our prospect." Apparently plaintiff had abandoned any thought of following up his contact with Mr. Ginsberg when he wrote the above letter.

■ Before a real estate broker is entitled to a commission it is necessary for him to establish not only that he was authorized to act as defendant's agent, but also that he produced a purchaser ready, willing and able to buy on the terms prescribed by the owner, and that he was the efficient agent or procuring cause of the sale. *Carpenter v. Francis,* 136 Colo. 494, 319 P. (2d) 497.

To entitle a real estate broker to a commission the testimony offered by him must be clear and convincing. *Johns v. Ambrose Williams,* 136 Colo. 390, 317 P. (2d) 897. In *Babcock v. Merritt,* 1 Colo. App. 84, 27 Pac. 882, it was said: "The law should be so defined and construed as to afford the owner of the property some protection against the persistent claims of brokers, who seek a recovery on purely technical grounds, and at the same time assure to the broker compensation for services honestly and actually rendered."

■ Here we have a claimed listing and testimony that months before any deal was consummated he had mentioned to a Mr. Ginsberg that the Elgin property was for sale. He did nothing to procure an offer or bring the buyer and seller together. All parties knew that Thomas, the owner, was himself advertising the property for sale and had listed it with several other brokers. All relevant testimony pertaining to this claim against Thomas was introduced by the parties, and we are convinced that

plaintiff failed in his proof. Something more is required of an agent to entitle him to a commission than to respond to an inquiry of whether he knows of any "downtown real estate" for sale, by mentioning to the inquirer that a particular piece of property is for sale which months later is sold to the inquiring individual. He made no effort to bring the parties together, initiated no negotiations and produced no offer. The trial court was correct in dismissing the plaintiff's claim against Thomas.

There was no error in dismissing the second claim against all the defendants.

■ Unless plaintiff was entitled to recover a commission from Thomas, which we have held he was not, no conspiracy, assuming there was one, could deprive him of such right or from which he could suffer any damages.

In *Lockwood Corp. v. Bockhaus*, 129 Colo. 339, 270 P. (2d) 193, it was said:

"Recovery of damages in a civil action for conspiracy, except in situations not here applicable, is not based on the conspiracy itself, but on damages resulting from an overt act or acts of one or more of the defendants, resulting from the conspiracy. *Meeks v. City of Loveland*, 85 Colo. 346, 276 Pac. 30; *Pullen v. Headberg*, 53 Colo. 502, 127 Pac. 954."

■ If, under a broker's contract with the seller, the purchase of the property by the buyer makes the seller liable for the payment of a commission to the broker, *he can recover it from the seller who employed him, and from no one else; if the transaction did not entitle him to a commission from the seller, he can recover it from no one*, for he has suffered no legal damage — he has lost nothing to which he was ever legally entitled.

In *Hoffman v. Johnston*, 68 Ohio App. 19, 36 N.E. (2d) 184, it was said:

"An examination of the amended petition discloses an attempt to state a joint cause of action against the defendants, based on conspiracy, *but there are no allega-*

*tions of any facts * * * showing any acts on the part of any of the defendants pursuant to the alleged conspiracy which have prevented plaintiff from in any way proceeding against the defendant Huber (the seller) alone in the manner provided by law for the collection of his claim and the enforcement of any judgment he might obtain thereon against him;* and there are no allegations of any facts showing any casual connection between the acts of the defendants and the damages claimed to have been sustained by plaintiff. To sum it up, there are no allegations of any facts showing that the plaintiff had been *deprived of his legal rights or damaged in any way by any of the acts alleged to have been done by any of the defendants pursuant to the alleged conspiracy."*

▮ In an appropriate case where an owner has listed his property with an agent, and deals with the agent's prospect in such manner as to exclude the agent with the purpose of avoiding the payment of a commission, he may incur liability therefor, but that is a matter resting on contract and does not concern the buyer. And this is true regardless of the buyer's motive in dealing direct with the owner.

Perceiving no error in the record, the judgment is affirmed.

MR. JUSTICE MOORE and MR. JUSTICE DOYLE concur.