**DOUBLE OAK CONSTRUCTION, L.L.C., a Colorado limited liability company, Plaintiff–Appellee,**

v.

**CORNERSTONE DEVELOPMENT INTERNATIONAL, L.L.C., a Colorado limited liability company; Bongil Ho; Brian Yoo, a/k/a Inhyung B. Yoo; and Muscanto, L.L.C., Defendants–Appellants.**

No. 02CA1162.

Colorado Court of Appeals, Div. IV.

Sept. 25, 2003.

Certiorari Denied Aug. 16, 2004.

Kennedy & Christopher, P.C., John R. Mann, Denver, Colorado, for Plaintiff–Appellee.

Hamil/Hecht LLC, Charles B. Hecht, Denver, Colorado, for Defendants–Appellants.

Opinion by Judge GRAHAM.

Defendants, Cornerstone Development International, L.L.C., Bongil Ho, Inhyung "Brian" Yoo, and Muscanto, L.L.C., appeal the trial court's judgment in favor of plaintiff, Double Oak Construction, L.L.C. We affirm.

The facts underlying this controversy are undisputed. Plaintiff entered into a contract with Cornerstone, Ho's alter ego, to construct, and later expand, a shopping plaza for $710,202. Ho named Yoo the owner of Cornerstone because Ho could not conduct business under his name because of outstanding and unsatisfied civil money judgments against him. Plaintiff was not paid fully for

this work, and it served Cornerstone its demand for arbitration in January 1997.

In August 1997, plaintiff obtained an arbitration award against Cornerstone of $47,293.61, plus interest, for work performed by plaintiff in the construction of the shopping plaza. The arbitration award was reduced to judgment in December 1997.

Meanwhile, in February 1997, one month after Cornerstone was served the demand for arbitration, Cornerstone sold the shopping plaza for $1.4 million to a California corporation, owned and managed by a business associate of Ho's brother, who was also involved with the corporation. The shopping plaza was Cornerstone's only asset. The corporation did not obtain a license to conduct business in Colorado until after its purchase of the shopping plaza. The money that Cornerstone received from the corporation was transferred to an individual in Hong Kong. In July 1998, the corporation conveyed the property to that individual in exchange for a promissory note in the amount of $1.389 million, and for $10, executed a covenant not to sue for nonpayment of the note. The individual then conveyed the property to Muscanto, an entity controlled by Ho, for $10.

Plaintiff filed an action against defendants for civil conspiracy and for fraudulent conveyance in violation of the Colorado Uniform Fraudulent Transfer Act (CUFTA), § 38–8–101, C.R.S.2002. Plaintiff also asserted a claim for breach of a special duty against Ho and Yoo and an alternative claim for fraudulent misrepresentation against Ho. Plaintiff sought exemplary damages related to the civil conspiracy claim as well as attorney fees.

At the bench trial, Ho admitted that the reason for the transfers was to avoid execution on the property and frustrate creditors. The court entered judgment for plaintiff on its fraudulent transfer claim. However, because the parties stipulated that title to the property would remain with Muscanto, the trial court, in lieu of voiding the conveyances, entered judgment for plaintiff in the amount of $62,484.35, which represented plaintiff's original judgment against Cornerstone, less a garnishment obtained, plus interest. The court found that Cornerstone was the alter ego of Ho and Yoo and held them both personally liable for the amount of the judgment.

The trial court also found in favor of plaintiff on its civil conspiracy claim and held defendants jointly and severally liable for actual damages consisting of attorney fees and costs, which were exacerbated by defendants' "false filings and forgery." The court awarded plaintiff exemplary damages in the amount of $100,000 against Ho and $25,000 against Yoo on the civil conspiracy claim. The court, however, found against plaintiff on its claims for breach of a special duty and fraudulent misrepresentation. This appeal followed.

## I.

Defendants contend, on several grounds, that the trial court erred in finding in favor of plaintiff on its claim for civil conspiracy. We address, and reject, each assertion in turn.

Defendants' arguments challenge the trial court's application of law, but do not challenge the trial court's findings that defendants engaged in a conspiracy to defeat, hinder, and delay plaintiff's rights as a creditor by fraudulently transferring property. There is abundant evidence to support those findings and other special circumstances, such as forgery, which were employed to frustrate plaintiff's attempts to satisfy its judgment.

Because the controlling facts are undisputed, the legal effect of those facts is a question of law. We are not bound by the trial court's conclusions of law, and hence our review is de novo. *Ocmulgee Props. Inc. v. Jeffery*, 53 P.3d 665 (Colo.App.2001).

## A.

Defendants argue that, because plaintiff's tort claims for fraudulent representation and breach of special duty were dismissed, there was no underlying "tort" basis for the civil conspiracy claim. We disagree.

We first note that the trial court based the civil conspiracy only on the fraudulent conveyances, determining that those convey-

ances were the legal wrong to which defendants conspired.

■ To establish a claim for civil conspiracy, a plaintiff must show by a preponderance of the evidence that there exists: (1) an object to be accomplished; (2) an agreement by two or more persons on a course of action to accomplish that object; (3) in furtherance of that course of action, one or more unlawful acts which were performed to accomplish a lawful or unlawful goal, or one or more lawful acts which were performed to accomplish an unlawful goal; and (4) damages to the plaintiff as a proximate result. *Magin v. DVCO Fuel Sys., Inc.,* 981 P.2d 673 (Colo.App.1999); *see also Nelson v. Elway,* 908 P.2d 102 (Colo. 1995).

■ In a civil action, conspiracy is a derivative cause of action that is not actionable per se. *Morrison v. Goodspeed,* 100 Colo. 470, 68 P.2d 458 (1937); *Pullen v. Headberg,* 53 Colo. 502, 127 P. 954 (1912). "[T]he essence of a civil conspiracy claim is not the conspiracy itself, but the actual damages resulting from the acts done in furtherance of the conspiracy." *Resolution Trust Corp. v. Heiserman,* 898 P.2d 1049, 1055 (Colo.1995). If the acts alleged to constitute the underlying wrong provide no cause of action, then there is no cause of action for the conspiracy itself. *See Jet Courier Serv., Inc. v. Mulei,* 771 P.2d 486 (Colo.1989)(there must be an unlawful act).

■ There is no requirement of an underlying garden variety "tort" to establish a claim for civil conspiracy. Rather, the elements for a civil conspiracy claim require that the underlying acts be unlawful and create an independent cause of action. *McElhanon v. Hing,* 151 Ariz. 386, 728 P.2d 256 (Ct.App.1985)(a legal wrong will support a conspiracy claim), *aff'd in part and vacated in part on other grounds,* 151 Ariz. 403, 728 P.2d 273 (1986).

Defendants argue that a fraudulent conveyance is not a legal wrong which will support conspiracy, unless and until the creditor obtains a lien against the property transferred. Indeed, under *Pullen v. Headberg, supra,* a claim of conspiracy to fraudulently convey property fails as a matter of common

law unless the claimant establishes a lien against the property transferred. Defendants urge that *Pullen* is still controlling precedent and, because plaintiff here did not file a lien before the property was conveyed, defendants committed no legal wrong. However, *Pullen* was decided before the enactment of CUFTA, and no Colorado case has since revisited the holding in *Pullen.* We do so now and reject defendants' argument.

■ We note that the principle behind the "lien requirement" rule is that, until a creditor obtains a lien giving him vested or specific rights in the debtor's property, the debtor is legally free to do what he will with his property. *Adler v. Fenton,* 65 U.S. (24 How.) 407, 16 L.Ed. 696 (1860); *see also Pullen v. Headberg, supra.* However, modern fraudulent transfer law, like CUFTA, has dispensed with the lien requirement, focusing instead on the debtor's intent to frustrate the creditor once its claim is made known.

■ CUFTA changes the common law rule, and we conclude that a transfer in violation of CUFTA is a legal wrong which will support a conspiracy claim. A minority of states have considered uniform acts similar to CUFTA and have modified their common law rule so that, even without a lien, a transfer to defeat a creditor who has filed a claim nevertheless constitutes a legal wrong and an underlying cause of action for a conspiracy claim. *Summers v. Hagen,* 852 P.2d 1165 (Alaska 1993); *McElhanon v. Hing, supra; Dalton v. Meister,* 71 Wis.2d 504, 239 N.W.2d 9 (1976).

The majority of jurisdictions hold that allowing a conspiracy claim on a theory that an unlawful conveyance is a wrongful act will effectively expand the remedies under the Uniform Fraudulent Transfer Act to include legal as well as equitable relief. *Forum Ins. Co. v. Devere Ltd.,* 151 F.Supp.2d 1145, 1149 n. 7 (C.D.Cal.2001). If we were to follow the majority, we would provide a creditor only limited relief where, as here, a combination of persons acts to increase a creditor's damages in hopes that the frustrated creditor will weigh the expense of the chase and go away. In these instances, equitable relief will not

make the creditor whole. We therefore follow the minority view.

We agree that a lien is not necessary before there is an actionable wrong. CUFTA makes certain transfers unlawful as against creditors without a lien and even as against creditors without a judgment:

A transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation ... [w]ith actual intent to hinder, delay, or defraud any creditor of the debtor....

Section 38–8–105(1)(a), C.R.S.2002. A creditor is a "person who has a claim," and a claim is "a right to payment, whether or not the right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured." Section 38–8–102(3), (5), C.R.S.2002.

Thus, in light of the enactment of CUFTA, a creditor who does not have a lien on the subject property is nevertheless entitled to assert a civil conspiracy cause of action against persons who participate in a fraudulent conveyance.

### B.

Defendants assert that, even if CUFTA dispenses with the common law lien requirement, the nature of the relief accorded by CUFTA is equitable, and violation of the statute does not constitute a tort which would support a claim of conspiracy. We disagree.

■ Simply because the statute prescribes equitable relief does not preclude a finding that the violation of the statute constitutes a legal wrong.

*Miller v. Kaiser,* 164 Colo. 206, 212, 433 P.2d 772, 775 (1967), instructs that in fraudulent conveyance actions, "the remedy sought is to return the property fraudulently conveyed to its prior status of ownership thereby bringing it within reach of the judgment creditor of the fraudulent transferor." In *Miller,* a conspiracy claim was dismissed because no special damages were pleaded. Defendants contend *Miller* thus indicates that a mere claim for equitable relief ordinarily will not support a claim for conspiracy because it does not seek to address a legal wrong, but seeks equitable assistance to aid in execution.

We read *Miller* as supporting a case such as this one, where special circumstances exist that warrant an award of actual damages so that "equity ... will not ... be outwitted and frustrated" by the willful and calculated acts of the debtor and those who aid and abet him. *Miller, supra,* 164 Colo. at 213, 433 P.2d at 775.

Moreover, a claim for conspiracy to defraud creditors has been recognized in Colorado. *See, e.g., Schreiber v. Burton,* 81 Colo. 370, 256 P. 1 (1927); *Magin v. DVCO Fuel Sys., Inc., supra; Hunter v. Ferguson,* 3 Colo.App. 287, 33 P. 82 (1893). Thus, under circumstances like those presented here, a fraudulent transfer is an unlawful act that supports a creditor's claim for conspiracy.

### C.

Defendants urge that § 13–21–111.5(4), C.R.S.2002, is a further indication that there must be an underlying tort before joint liability may be imposed upon them. Again, we disagree.

Section 13–21–111.5(4) provides that "[j]oint liability shall be imposed on two or more persons who consciously conspire and deliberately pursue a common plan or design to commit a tortious act."

■ The supreme court held that the term "tortious act" in § 13–21–111.5(4) includes "any conduct other than breach of contract that constitutes a civil wrong and causes injury or damages." *Resolution Trust Corp. v. Heiserman, supra,* 898 P.2d at 1055. In so holding, the court stated that "[t]here is no basis to assume that by using the term 'tortious act' in section 13–21–111.5(4) the General Assembly for some reason intended to exclude one or more forms of wrongful conduct from the scope of that term." *Resolution Trust Corp. v. Heiserman, supra,* 898 P.2d at 1056. Thus, "tortious act" encompasses any wrongful conduct. *Resolution Trust Corp. v. Heiserman, supra.*

We have held that fraudulent transfers are wrongful acts that may justify an award of actual damages in addition to equitable relief. Where those circumstances exist, a cause of action for conspiracy may be asserted. Thus, the trial court properly found that a claim for civil conspiracy existed in this case.

### D.

We also reject defendants' contention that plaintiff's remedies are limited to those expressed under CUFTA and that the trial court erred in imposing joint liability upon them.

■ We reject the notion that remedies available to a victim of a fraudulent conveyance are limited to those expressed in the statute.

CUFTA's remedies are set forth in § 38-8-108, C.R.S.2002:

(1) In an action for relief against a transfer or obligation under this article, a creditor, subject to the limitations in section 38-8-109, may obtain:

(a) Avoidance of the transfer or obligation to the extent necessary to satisfy the creditor's claim;

(b) An attachment or other provisional remedy against the asset transferred or other property of the transferee in accordance with the procedure prescribed by the Colorado rules of civil procedure;

(c) Subject to applicable principles of equity and in accordance with applicable rules of civil procedure:

(I) An injunction against further disposition by the debtor or a transferee, or both, of the asset transferred or of other property;

(II) Appointment of a receiver to take charge of the asset transferred or of other property of the transferee; or

(III) Any other relief the circumstances may require.

(2) If a creditor has obtained a judgment on a claim against the debtor, the creditor, if the court so orders, may levy execution on the asset transferred or its proceeds.

Additionally, to the extent that a transfer is voidable under § 38-8-108(1)(a), a creditor may "recover judgment for the value of the asset transferred ... or the amount necessary to satisfy the creditor's claim, whichever is less." Section 38-8-109(2), C.R.S.2002.

The remedies in §§ 38-8-108 and 38-8-109(2) do not limit other remedies available at law. Section 38-8-111, C.R.S.2002, states that "[u]nless displaced by the provisions of this article, the principles of law and equity ... supplement the provisions of this article."

■ Designated statutory remedies must be followed exclusively if the statute creates legal duties that were unknown at common law and provides a particular means for their enforcement. *Virdanco, Inc. v. MTS Int'l*, 820 P.2d 352 (Colo.App.1991); *Silverstein v. Sisters of Charity*, 38 Colo.App. 286, 559 P.2d 716 (1976). However, preexisting common law rights and remedies are not terminated absent clear legislative intent to abrogate them by the enactment of a new right. *Farmers Group, Inc. v. Williams*, 805 P.2d 419 (Colo.1991).

We must glean the General Assembly's intent by construing the plain language of the statute. *Farmers Group, Inc. v. Williams, supra.*

Here, the language of § 38-8-111 expressly permits parties to pursue other remedies, evincing the General Assembly's intention not to abrogate preexisting common law claims and remedies by the enactment of CUFTA.

■ Civil conspiracy is an "independent tort," and "[a] claim for damages arising from a civil conspiracy may be pled as a separate claim." *See, e.g.,* CJI-Civ. 4th 27:1, notes on use. Thus, civil conspiracy provides plaintiffs with damage remedies independent of those provided under CUFTA. *See Dalton v. Meister, supra* (plaintiff stated a cause of action against the bank for conspiracy, which provides him with damage remedies independent of those provided under the Uniform Fraudulent Conveyance Act); *McElhanon v. Hing, supra* (conspiracy is a cause of action apart from the uniform act, and thus plaintiff is entitled to money damages).

Because there is no suggestion that a claim for conspiracy to convey property fraudulently is abrogated by CUFTA, we conclude that the trial court did not err in imposing joint tort liability on defendants for conspiracy to convey property fraudulently.

## II.

Defendants also contend that the trial court abused its discretion in awarding plaintiff exemplary damages pursuant to § 13–21–102, C.R.S.2002, because the only claim upon which plaintiff prevailed—fraudulent conveyance—was equitable in nature. We reject this contention.

Section 13–21–102(3)(a) permits a trial court to increase any exemplary damages award to a sum that does not exceed three times the actual damages if, as relevant here, during the pendency of the action, a party engages in willful and wanton conduct and such behavior has further aggravated the damages of the other party, when the wrongdoer knew or should have known that such conduct would cause aggravation.

▉ Although an award of exemplary damages rests in the discretion of the trier of fact, the sufficiency of evidence to support such an award is a question of law for the appellate court to decide. *Archer v. Farmer Bros. Co.*, 70 P.3d 495 (Colo.App.2002).

▉ Exemplary damages are unavailable on a fraudulent conveyance claim because such a claim is purely equitable, and exemplary damages are unavailable in equitable actions. *Miller v. Kaiser, supra; Morris v. Askeland Enters., Inc.*, 17 P.3d 830 (Colo. App.2000).

▉ The trial court, however, awarded exemplary damages on plaintiff's civil conspiracy claim, which is an independent tort that seeks actual damages. *See Meek v. Smith*, 59 Colo. 461, 463, 149 P. 627, 628 (1915)(a corporation may be held liable in damages for torts in pursuance of a conspiracy and be guilty of malice or oppression and subject to both actual and exemplary damages).

▉ Here, the trial court found that plaintiff suffered actual damages and that:

[T]he conduct of defendants Ho and Yoo was attended by circumstances of fraud, deceit, malice, and willful and wanton conduct.... Ho ... has acted in a willful and wanton manner during the pendency of the proceedings that further aggravated plaintiff's damages when he knew or should have known that his conduct would have produced such aggravation of plaintiff's damages.

Defendants do not challenge the trial court's findings, and the evidence is adequate to support an award of exemplary damages.

## III.

Last, defendants contend that the trial court abused its discretion in awarding plaintiff attorney fees as damages under § 13–17–101, et seq., C.R.S.2002, and the obdurate behavior doctrine. We disagree.

### A.

Defendants assert that the trial court erred in awarding plaintiff attorney fees as damages, not as costs. We disagree.

The difficulty in characterizing attorney fees as damages or costs has been summarized as follows:

Perhaps the best answer is that attorney fees are neither costs nor damages, but a hybrid, partaking of each in varying degrees. Even when they are classified as costs, they are not treated as are ordinary costs, but as a separate item of monetary relief; even when they are treated as damages, they are often awarded and set by a court, even in a jury trial.

*Ferrell v. Glenwood Brokers, Ltd.*, 848 P.2d 936, 941 (Colo.1993)(quoting 1 May Frances Derfner & Arthur D. Wolf, *Court Awarded Attorney Fees* ¶ 1.02 at 1–9 (1992)).

▉ A realization that attorney fees are a hybrid of costs and damages is important, because in cases where recovery of attorney fees is authorized, either by statute, court rule, contract, or common law, a classification of such an award as either "costs" or "damages" can determine the outcome. For example, if attorney fees are "damages," then the merits of a lawsuit are not appeal-

able until the amount of fees has been determined. If they are considered damages, attorney fees must be determined by the trier of fact and proved during the damages phase and can be multiplied under statutes that permit doubling and trebling of damages. Post-judgment interest may be awarded on attorney fees treated as damages. *Ferrell v. Glenwood Brokers, Ltd., supra.*

If attorney fees are classified as "costs," then an appeal on the merits can proceed independent of the fees issue. Costs can be taxed by the clerk after being determined by a judge without being specifically pleaded, with issues of entitlement and amount not reached until after the merits are decided. Finally, costs are not subject to double and treble damages. *Ferrell v. Glenwood Brokers, Ltd., supra.*

Attorney fees are clearly damages if they are part of the substance of a lawsuit, that is, if the fees being sought are "the legitimate consequences of the tort or breach of contract sued upon." *Bunnett v. Smallwood,* 793 P.2d 157, 160 (Colo.1990)(quoting *Taypayers for Animas–LaPlata Referendum v. Animas–LaPlata Water Conservancy Dist.,* 739 F.2d 1472, 1480 (10th Cir.1984)). Alternatively, if attorney fees are simply the consequence of a contractual agreement to shift fees to a prevailing party, they should be treated as "costs," at least where the fee-shifting contract provision is not the subject of the dispute between the parties and the contract itself is proved to exist. In such a case, it is within the sound discretion of the trial court to defer consideration of the entitlement to such fees, and the amount of the fees, until the merits of the case are decided. *Ferrell v. Glenwood Brokers, Ltd., supra.*

Classification of attorney fees as either costs or damages is fact sensitive and rests within the sound discretion of the trial court. Such discretion should be guided by the nature of the requested attorney fees. *Ferrell v. Glenwood Brokers, Ltd., supra.*

Damages are a measure of the loss or harm, generally in the form of pecuniary compensation, resulting from an injury suffered by a person because of the unlawful act, omission, or negligence of another. *Wilcox v. Clark,* 42 P.3d 29 (Colo.App.2001).

Here, the trial court awarded attorney fees as actual damages under the theory that, but for defendants' obdurate conduct, plaintiff would not have incurred attorney fees in pursuing its judgment. Furthermore, attorney fees were requested by plaintiff in its claim for conspiracy and were awarded by the trial court during the damages phase of trial. Because it is within the discretion of the trial court whether to characterize attorney fees as damages or costs, we will not disturb the court's characterization.

## B.

Defendants also contend that, under the American rule, plaintiff was not entitled to attorney fees under § 13–17–101, et seq. or the obdurate behavior doctrine. We are not persuaded.

Colorado follows the American rule under which a party cannot recover his or her legal fees, whether as "costs" or "damages," unless there is some exception to the general rule. *Ferrell v. Glenwood Brokers, Ltd., supra.* In the absence of a statute or contractual agreement, attorney fees are not ordinarily recoverable as an element of damages in a tort or contract action. *E.F. Hutton & Co. v. Anderson,* 42 Colo.App. 497, 596 P.2d 413 (1979).

Section 13–17–101, et seq., is an exception to the American rule and provides that attorney fees may be recovered at the discretion of the trial court if it is determined that the bringing or defense of an action has been "substantially frivolous, substantially groundless, or substantially vexatious." *Bunnett v. Smallwood, supra,* 793 P.2d at 162.

Additionally, § 13–17–102(2), C.R.S.2002, provides for an award of attorney fees against an attorney or party who asserts a claim or defense that "lacked substantial justification." In that context, "lacked substantial justification" means substantially frivolous, substantially groundless, or substantially vexatious. Section 13–17–102(4), C.R.S.2002.

A claim or defense is frivolous if the proponent can present no rational argument based on the evidence or the law to support it. A claim or defense is groundless if the proponent's allegations, while sufficient to survive a motion to dismiss for failure to state a claim, are not supported by any credible evidence at trial. *W. United Realty, Inc. v. Isaacs,* 679 P.2d 1063 (Colo.1984).

Similarly, under the obdurate behavior doctrine, attorney fees may be awarded if the losing party has acted in bad faith or for oppressive reasons. *Silverstein v. Sisters of Charity, supra.* This exception applies only to bad faith conduct relating to the prosecution or defense of the action. *E.F. Hutton & Co., Inc. v. Anderson, supra.*

The determination of whether a claim or defense is groundless or frivolous under § 13–17–102 is within the discretion of the trial court, whose decision will not be disturbed on appeal if supported by the record. *Schoonover v. Hedlund Abstract Co.,* 727 P.2d 408 (Colo.App.1986).

Here, the trial court found that "the defense of this lawsuit lacked substantial justification and was substantially groundless, substantially frivolous, and substantially vexatious and ... maintained in bad faith." In so holding, the court found that:

[D]efendants made no attempt to admit key facts in the case until the latter hours of trial when Mr. Ho and Mr. Yoo admitted they had not previously told the truth in prior depositions and other key facts; and that defendants dismissed their counterclaims and many defenses during trial long after it should have been apparent that these claims and defenses lacked substantial justification. All such facts necessary to assist the defendants in determining the validity of their counterclaims and defenses were available at the time the Amended Complaints were served upon the defendants. Also, the relative financial positions of the parties favor the defendants, the defenses were maintained in bad faith, issues of fact determinative of the defendants' defenses were not reasonably in conflict, and plaintiff has substantially prevailed with respect to the number of claims and the amount in controversy.

Defendants do not challenge the trial court's findings, and we conclude that there is abundant record support for these findings. Thus, the trial court did not abuse its discretion in awarding attorney fees under § 13–17–102 and the obdurate behavior doctrine.

### C.

Defendants also argue that the trial court erred in not following the prescribed procedures for awarding attorney fees under C.R.C.P. 121 § 1–22. Again, we disagree.

C.R.C.P. 121 § 1–22(2), by its terms, applies to:

[R]equests for attorney fees made at the conclusion of the action, including attorney fee awards requested pursuant to Section 13–17–102, C.R.S. It also includes awards of fees made to the prevailing party pursuant to a contract or statute where the award is dependent upon the achievement of a successful result in the litigation in which fees are to be awarded and the fees are for services rendered in connection with that litigation.

The rule does not apply expressly to "attorney fees which are part of a judgment for damages." C.R.C.P. 121 § 1–22(2).

Here, attorney fees were properly awarded as damages, and thus, the procedures outlined in C.R.C.P. 121 § 1–22(2) do not apply.

### D.

We also reject defendants' assertion that the award of attorney fees must be vacated because the trial court failed to consider the apportionment factor set forth in § 13–17–103(1)(g), C.R.S.2002.

Here, the court made the attorney fees award in the course of the trial and not in a posttrial hearing. The fees were supportable under either § 13–17–101 or as actual damages for the conspiracy claim, and therefore, apportionment was not necessary.

**152**

### E.

We likewise reject defendants' contention that the trial court erred in calculating the attorney fees as $195,128.

An award of attorney fees must be reasonable. The determination of reasonableness is a question of fact for the trial court, and its ruling will not be disturbed on review unless patently erroneous and unsupported by the evidence. *Tallitsch v. Child Support Servs., Inc.*, 926 P.2d 143 (Colo.App. 1996).

The initial estimate by the court of a reasonable attorney fee is reached by calculation of the "lodestar" amount. This amount represents the number of hours reasonably expended multiplied by a reasonable hourly rate and carries with it a strong presumption of reasonableness. Once the lodestar amount is determined, that base amount may be adjusted upward or downward. *Balkind v. Telluride Mountain Title Co.*, 8 P.3d 581 (Colo.App.2000).

The trial court found that, under the lodestar test, the hourly rate charged by plaintiff's attorneys was reasonable and consistent with the prevailing market rate in Denver. The court also concluded that the amount of attorney fees awarded was reasonable in light of the complexity of the case, the amount in controversy, and the value of the counsel's services to plaintiff.

At trial, plaintiff's expert testified that, under the lodestar method, the amount of fees awarded by the court was reasonably and necessarily incurred. Defendants presented no expert challenging the reasonableness or amount of attorney fees incurred by plaintiff.

The trial court's findings are supported by the record, and the conclusion comports with applicable law. *See W. United Realty, Inc. v. Isaacs, supra.*

The judgment is affirmed.

Chief Judge DAVIDSON and Judge NIETO concur.